**Donato JASO III, a/k/a Jaso Donato III, Appellant,**

v.

**James A. McCARTHY and Estrella A. McCarthy, Appellees.**

**James A. McCARTHY, Cross–Appellant,**

v.

**Donato JASO III, Cross–Appellee.**

Nos. S–7115, S–7155.

Supreme Court of Alaska.

Sept. 20, 1996.

Earl M. Sutherland, Reed McClure, Seattle, WA, and Dennis Bump and John Tiemessen, Hughes, Thorsness, Gantz, Powell & Brundin, Fairbanks, for Appellant/Cross–Appellee.

Thomas R. Wickwire, Fairbanks, for Appellee/Cross–Appellant.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

### OPINION

EASTAUGH, Justice.

## I. INTRODUCTION

A jury awarded James McCarthy damages of $4,000 against Donato Jaso III. Jaso appeals issues relating to his offer of judgment and McCarthy's attorney's fees award. McCarthy cross-appeals rulings relating to evidence of his medical insurance and Jaso's closing argument.[1] We affirm the rulings appealed by McCarthy and reverse the fees award.

## II. FACTS AND PROCEEDINGS

On April 2, 1991, a vehicle driven by Jaso rear-ended McCarthy's car. The only trial issue was damages, particularly whether McCarthy's damages resulted from the collision or his pre-existing condition, and whether his wife, Estrella McCarthy, could recover for loss of consortium.

McCarthy has suffered from neck injuries and conditions since childhood. He was in accidents in 1958, 1965, 1984, and 1986 and underwent neck surgeries in 1968, 1970, 1980, 1982, and 1988. In the 1988 operation, Dr. John Joosse attempted to fuse the C–5/C–6 and C–4/C–5 vertebrae. In October 1990 McCarthy fell and sought treatment for resulting neck and shoulder pain. In November 1990 he was diagnosed with pseudarthrosis in the area operated on in 1988. Dr. Joosse described pseudarthrosis as a false joint made up of scar tissue which moves and irritates the nerves and spinal cord, "causing a whole host of symptoms."

Allstate Insurance provided medical payments coverage to McCarthy for his 1986 car accident. On February 7, 1991, Allstate wrote McCarthy informing him that his medical payments coverage for the 1986 accident would expire March 10, 1991, five years from the date of loss.

Following the collision on April 2, 1991, McCarthy was treated first by Dr. Ralph Marx, and then by Dr. Joosse. In October 1991 Dr. Joosse again attempted to fuse the C–5/C–6 vertebrae. In a letter to Jaso's insurance company, Dr. Joosse wrote regarding this operation:

> James McCarthy has had increasing symptoms with regard to his neck since a motor vehicle accident of 4–2–91.... Our impression is that he has a symptomatic pseudoarthrosis of C5–6. He has already been seen by a second opinion orthopedic surgeon who agrees with the diagnosis and

---

1. McCarthy did not appeal the denial of his motion for a new trial; he did not list this issue in his statement of points on cross-appeal or in his statement of the issues in his briefs to this court. However, McCarthy articulated the standard of review for the denial of a motion for a new trial as the applicable standard in his opening brief of his cross-appeal and requested a new trial in his prayer for relief. This prayer for relief is made in context of the errors of law argued by McCarthy. Although Jaso presents arguments on the denial of the motion for a new trial, McCarthy has waived this issue by failing to list it or address it substantively. Therefore, we decline to reach it.

agrees with the recommendation for surgery.

McCarthy's insurance company, Allstate, covered his expenses for the 1991 surgery. On November 8, 1991, Allstate notified Jaso's liability insurer that, to date, it had paid $4,300.68 for injuries allegedly incurred in the Jaso/McCarthy collision, and asserted subrogation rights to any settlement payment between Jaso's insurer and McCarthy.

In December 1992 Jaso informally offered to settle.[2] McCarthy rejected Jaso's offer; he and his wife sued Jaso in April 1993. Jaso made a Civil Rule 68 offer of judgment on July 7, 1994.[3] McCarthy rejected this offer.

Damages were tried to a jury in December 1994. McCarthy presented evidence that his medical expenses approximated $31,000. By special verdict, the jury awarded McCarthy damages of $3,000 for medical expenses and $1,000 for past non-economic losses. It awarded nothing to Estrella McCarthy.

Jaso, arguing that his $20,000 offer of judgment was more favorable to McCarthy than the jury's $4,000 verdict, sought attorney's fees under Alaska Civil Rule 68. In opposition, McCarthy claimed he was the prevailing party, moved for attorney's fees, and submitted a letter from Allstate in which it asserted it had subrogation rights to $24,620.08 as of July 7, 1994, the date of Jaso's offer of judgment.

2. A letter from Jaso's attorney stated:
I have been authorized to offer the all inclusive sum of $20,000 in settlement. This is inclusive of interest, costs and attorney's fees and is made with the expectation and understanding that your client would satisfy any and all medical or other liens or subrogated interests.

3. The formal offer of judgment stated:
Defendant Donato Jaso, by and through counsel of record, and pursuant to Rule 68, hereby makes an offer of judgment to Plaintiff James McCarthy in the all-inclusive amount of $20,000. This sum includes interest, costs and attorney's fees. If you accept this offer, the maximum amount you will receive is $20,000 and from that amount you will be required to satisfy all liens, subrogated interests, and other claims of any kind or nature arising out of the April 02, 1991, automobile accident which forms the subject matter of your lawsuit.

The court held that the verdict exceeded the offer of judgment and awarded $1,108.61 in attorney's fees to McCarthy. McCarthy's final judgment, including pre-judgment interest, attorney's fees, and costs, was $11,598.35.

## III. DISCUSSION

### A. Evidence of McCarthy's Insurance Coverage for His 1986 Accident

While cross-examining McCarthy, Jaso's attorney inquired about correspondence between McCarthy and Allstate in November 1990 and January and February 1991, regarding Allstate's coverage of medical expenses resulting from McCarthy's 1986 accident.[4] Jaso attempted to show a relationship between the expiration of McCarthy's insurance coverage and McCarthy's claim that his pain and injuries were attributable to the April 1991 accident. McCarthy objected to the admission of evidence showing he had insurance. The trial court allowed the inquiry on the condition that Jaso make it clear McCarthy's coverage was for a prior injury. The court also stated that McCarthy could request a jury instruction at a later time.

McCarthy argues that it was reversible error to admit this evidence. He asserts that evidence of insurance coverage for the 1986 accident, coupled with evidence that McCarthy had retained the insurance agent mentioned in conjunction with the coverage for the 1986 accident, allowed the jury to infer

4. On November 30, 1990, after Dr. Joosse diagnosed pseudarthrosis, McCarthy wrote the Allstate representative handling his claim for the 1986 accident:

Connie, I am having problems and went to [the] doctor to check up and found that the neck is opening up where it was operated on.

On January 29, 1991, McCarthy wrote on a bill he was submitting to Allstate:

This checkup shows that my condition is getting much worse and again I refuse to let them operate because they cannot assure me that it will help or improve my condition a great deal.

As noted above, in February 1991 Allstate informed McCarthy that his medical payments coverage for the 1986 accident would expire on March 10, 1991.

that McCarthy was insured for the medical expenses caused by the 1991 accident.

■ To prevail on appeal, McCarthy bears the burden of showing that the admission was erroneous and that it had a substantial influence on the outcome of the case. *See Myers v. Robertson*, 891 P.2d 199, 208 (Alaska 1995) (citing *Loof v. Sanders*, 686 P.2d 1205, 1209 (Alaska 1984)). Alaska Civil Rule 61 dictates that an error in the admission of evidence is not grounds for reversal "unless refusal to take such action appears to the court inconsistent with substantial justice." [5] In *Love v. State*, 457 P.2d 622 (Alaska 1969), we articulated the harmless error standard as follows:

> The test is not whether, with the erroneous matter elided from the record, there would be enough evidence to support a conviction. It is not for us to speculate on the outcome at a retrial, absent the erroneous matter. The pivotal question is what the error might have meant to the jury. Our function is to consider not how the error would have affected us if we had tried the case, but how it may have affected a jury of reasonable laymen. It is the impact on their minds which is critical in determining whether an error impaired or affected the substantial interest of the defendant in having a fair trial.

*Id.* at 630.[6]

We do not resolve the question of whether the admission was erroneous because we hold that even if erroneous, it was harmless error. In allowing the evidence, the court required Jaso to make it clear in his questioning that the insurance coverage was for the earlier accident. McCarthy nonetheless argues that the jury inferred from this evidence that his accident with Jaso was covered by insurance and thus discounted its award. This argument is necessarily speculative and the record, with the putative erroneous admission elided, contains sufficient evidence to support the jury's verdict. Therefore, we hold that at most the admission of evidence of McCarthy's insurance for an earlier accident was harmless error.

■ McCarthy also argues that the court committed reversible error by failing to give a curative instruction. McCarthy asserts that the court said that it would give an instruction but never did. The transcript reveals that the trial court overruled McCarthy's objection and declined to give an immediate instruction but told McCarthy's counsel that "if we need to address it in the form of a (indiscernible) instruction, we can do that. But let's argue about that (indiscernible) after 1:30 today." [7]

■ Alaska Civil Rule 51(a) requires a specific objection if a party is to claim error for giving or failing to give a jury instruction. *See also Conam Alaska v. Bell Lavalin, Inc.*, 842 P.2d 148, 153 n. 8 (Alaska 1992). The court's knowledge of a party's position with respect to an instruction is not sufficient; a specific request or objection is required. *State v. Dupere*, 709 P.2d 493, 498 n. 5 (Alaska 1985), *modified on other grounds*, 721 P.2d 638 (Alaska 1986). In *Dupere*, we stated:

> The fact that the trial court was aware of the State's position on the issue does not excuse the State's failure to object to the instructions when afforded the opportunity to do so. "The purpose of this rule [Civil

---

5.  Alaska Civil Rule 61 states in full:

    No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

6.  In *Poulin v. Zartman*, 542 P.2d 251 (Alaska 1975), we held that because the civil and criminal rules for harmless error are sufficiently similar, "case law in the criminal area is applicable and instructive" on the issue of civil harmless error. 542 P.2d at 261. *Poulin* recognized *Love v. State*, 457 P.2d 622 (Alaska 1969), as providing the definitive law on harmless error. *Poulin*, 542 P.2d at 261.

7.  The judge later reiterated, "[i]f we need to formulate some sort of an instruction to address the insurance problem, we can do that. But we don't need to worry about that, now."

Rule 51(a)] is to enable the trial judge to avoid error by affording him an opportunity to correct his charge before it goes to the jury. The dictates of the rule are satisfied only if the judge is clearly made aware of the alleged error in or omission from the instructions. Counsel's objections must be specific enough to clearly bring into focus the precise nature of the asserted error."

*Id.* (alteration in original) (citations omitted) (quoting *Saxton v. Harris,* 395 P.2d 71, 73 (Alaska 1964)).

■■■ The court told McCarthy's counsel that it would give an instruction if one was necessary and that it would consider arguments on the issue at a later point. McCarthy failed to re-visit the issue, as invited by the court, and did not object to the court's failure to give an instruction on the issue before the jury retired to consider the verdict. Therefore, we review this issue only for plain error. *Zok v. State,* 903 P.2d 574, 577 (Alaska 1995) (citing *Conam Alaska,* 842 P.2d at 153). A plain error is an obvious mistake creating "a high likelihood that the jury will follow an erroneous theory resulting in a miscarriage of justice." *Conam Alaska,* 842 P.2d at 153 (quoting *Ollice v. Alyeska Pipeline Serv. Co.,* 659 P.2d 1182, 1185 (Alaska 1983)). There is "a heavy burden on the appellants to prove that an error was *highly likely* determinative. We have emphasized that we will not speculate on whether the error altered the result." *Conam,* 842 P.2d at 153.

McCarthy argues that the evidence of his insurance prejudiced the jury, causing it to discount its verdict.[8] McCarthy contends that, given Jaso's liability, the jury's award can only be explained by concluding that the jury discounted the damages because it inferred that McCarthy had insurance. This argument relies on a number of assumptions, particularly, (1) the jury inferred that McCarthy had insurance for the 1991 accident; and (2) the jury discounted its award because of that inference. McCarthy asserts that even if the jury believed Jaso was not responsible for all the medical costs, "a verdict in the $15,000 to 20,000 range on [the] total evidence of $31,000 seems to be a logical minimum, i.e., viewing evidence least favorably to [McCarthy]."

The evidence permitted the jury to conclude that not all of McCarthy's medical expenses were attributable to the 1991 collision. McCarthy's argument relies on speculation and would require us to reweigh the evidence. McCarthy has not shown that the failure to give a curative instruction was plain error because he has not shown that the failure was highly likely determinative of the verdict.

The court did not abuse its discretion in allowing the evidence. We do not consider whether it was error to fail to give a curative instruction because McCarthy did not request one as instructed by the court. The court's failure to give an instruction absent a request was not plain error.

### B. *Jaso's Closing Argument*

■■■ McCarthy alleges reversible error with respect to statements made in closing argument by Jaso's counsel.[9] McCarthy argues that Jaso made a conscious attempt to improperly influence the jury by exacerbating the prejudicial impact of the insurance evidence allowed by the court. The court refused to instruct, as McCarthy requested, that Jaso was covered by insurance and would not have to personally pay any judgment.

---

8. McCarthy's arguments that the jury was prejudiced are founded upon the theory that the trial court erroneously admitted evidence of his insurance. McCarthy does not raise an independent ground alleging passion or prejudice. Because we find that the admission of the insurance evidence, if erroneous, was harmless error, we reject McCarthy's prejudice arguments.

9. In his closing arguments, Jaso's attorney stated that no one disputed that McCarthy had definite and long-standing health problems "but, to saddle [Jaso] with that is the point of this case." This statement was cut short by McCarthy's objection, was subsequently stricken by the court and rephrased in the following manner:

> To say that my client—I used "to saddle"—that my client was—is the cause of all these problems, I think is not only contrary to the evidence, it's contrary to your common sense.

As stated *infra*, McCarthy has the burden of proving both error and prejudice. *Myers v. Robertson*, 891 P.2d 199, 208 (Alaska 1995); *Zerbinos v. Lewis*, 394 P.2d 886, 889–90 (Alaska 1964). The putative prejudicial statement was stricken by the court, and Jaso's counsel rephrased his argument and made it indisputably non-prejudicial. The court, however, refused to instruct the jury that Jaso had insurance. Jaso's argument was not so blatant or inflammatory that, once stricken and rephrased, it would have influenced a reasonable juror in such a way as to deprive McCarthy of a fair trial. Further, the "curative" instruction McCarthy sought regarding Jaso's insurance was not necessary and might have needlessly prejudiced Jaso. The court did not err in refusing to give the requested curative instruction.

### C. Rule 68 Offer of Judgment and Award of Attorney's Fees

#### 1. Standard of review

"An offer of judgment and acceptance thereof is a contract." *Davis v. Chism*, 513 P.2d 475, 481 (Alaska 1973). The interpretation of a contract is a question of law to which we apply our independent judgment. *Alaska Energy Auth. v. Fairmont Ins. Co.*, 845 P.2d 420, 421 (Alaska 1993). Additionally, interpretation of Civil Rule 68 presents a pure question of law which we review *de novo*. *Toney v. Fairbanks N. Star Borough Sch. Dist., Bd. of Educ.*, 881 P.2d 1112, 1114 (Alaska 1994). Under this standard, we adopt "the rule of law which is most persuasive in light of precedent, policy and reason." *Summers v. Hagen*, 852 P.2d 1165, 1169 (Alaska 1993) (citing *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979)).

We will reverse a prevailing party determination only for an abuse of discretion and will set aside an award of attorney's fees only if it is manifestly unreasonable. *Blumenshine v. Baptiste*, 869 P.2d 470, 474 (Alaska 1994) (citing *Buoy v. ERA Helicopters, Inc.*, 771 P.2d 439, 448 (Alaska 1989); *Myers v. Snow White Cleaners & Linen Supply, Inc.*, 770 P.2d 750, 752 (Alaska 1989)).

#### 2. Grow v. Ruggles

In awarding attorney's fees to McCarthy, the superior court relied on *Grow v. Ruggles*, 860 P.2d 1225 (Alaska 1993), to hold that the judgment based on the jury verdict of $4,000 was more favorable than Jaso's Civil Rule 68 offer of judgment of $20,000.[10] The superior court interpreted *Grow* as mandating that an offer of judgment be "construed in light of any subrogation claim asserted against it." Because Allstate asserted that its subrogated interest was $24,620 when Jaso made the offer of judgment, the superior court concluded that Jaso's offer was completely offset by the Allstate lien and was "worthless." The court found that the judgment was more favorable to McCarthy because it awarded him $1,000 above the medical expenses award. Therefore, the court held that Jaso was not entitled to attorney's fees under Rule 68 and that McCarthy was the prevailing party.

For Jaso to be entitled to fees under Rule 68 he must have made a valid offer of judgment which was more favorable than the judgment finally rendered. For an offer to be valid, it must not be conditional or joint. *Grow*, 860 P.2d at 1227–28. In *Grow*, we held that an offer is not conditional al-

10. Alaska Civil Rule 68, in pertinent part, states:

(a) At any time more than 10 days before the trial begins, either the party making a claim or the party defending against a claim may serve upon the adverse party an offer to allow judgment to be entered in complete satisfaction of the claim for the money or property or to the effect specified in the offer, with costs then accrued. . . .

(b) If the judgment finally rendered by the court is not more favorable to the offeree than the offer, the prejudgment interest accrued up to the date judgment is entered shall be adjusted as follows:

(1) if the offeree is the party making the claim, the interest rate will be reduced by the amount specified in AS 09.30.065 and the offeree must pay the costs and attorney's fees incurred after the making of the offer (as would be calculated under Civil Rule 79 and 82 if the offeror were the prevailing party). The offeree may not be awarded costs or attorney's fees incurred after the making of the offer.

(2) if the offeree is the party defending against the claim, the interest rate will be increased by the amount specified in AS 09.30.065.

though it acknowledges the existence of a lien and notes that a party is responsible for any liens that may exist against a settlement. *Id.* The offer in *Grow* stated that the plaintiff "would be responsible for paying any lien." *Id.* Jaso's offer stated that McCarthy "would be required to satisfy all liens . . . ." We see no material distinction between these offers and therefore hold that Jaso's offer was not conditional.

Neither was Jaso's offer joint. It did not require Allstate to accept its terms. Rather, it "merely summariz[ed] standard subrogation theory" and did not attempt to "coerce collection of the subrogation lien on specific terms as a precondition to settlement of the liability case." *Id.* McCarthy's arguments to the contrary are unpersuasive. Consequently, we hold that Jaso made a valid Rule 68 offer of judgment.

The superior court erred in interpreting *Grow* and comparing Jaso's offer with the final judgment. In *Grow,* this court held that the defendant was entitled to attorney's fees pursuant to Rule 68 when his offer of judgment was more favorable than the judgment finally rendered, even though the offer stated that the plaintiff would be responsible for paying any liens against the claims. *Id.* at 1227–28.[11] The jury awarded the plaintiff $31,777.88 for medical expenses, the exact amount of medical expenses claimed, and $14,760 in lost past and future income. *Id.* at 1226. In finding that the offer of judgment was more favorable to the plaintiff, we stated that "[t]he bottom line is that Grow offered Ruggles $35,000 above her medical expenses. The jury awarded her only $14,760 over medical expenses." *Id.* at 1228.

11. Allstate Insurance, which covered both the plaintiff and defendant in *Grow,* asserted a subrogation lien against the defendant's liability policy for payments made to cover the plaintiff's medical expenses. *Grow,* 860 P.2d at 1226. The defendant made an offer of judgment for $66,526.70, referencing the lien of $31,526.70 and asserting that the plaintiff would be responsible for paying any liens out of the offered amount. *Id.* at 1227. The offer concluded that "[a]ccordingly, the net amount of this offer is $35,000." *Id.*

12. Under *Farnsworth v. Steiner,* 601 P.2d 266, 272 & n. 14 (Alaska 1979), *rev'd in part on other*

*Grow* contains no rule explicitly requiring trial courts to take into account subrogated interests when comparing the relative values of a settlement offer and the judgment finally entered. The superior court interpreted *Grow* as comparing the net values of the offer and judgment after subtraction of the lien. However, *Grow* did not compare net values after the lien; rather, it compared the offer and the judgment in terms of medical and non-medical damages awards and found that once the medical expenses were deducted from both, the remaining $35,000 of the offer was more favorable than the $14,760 of the jury award. *Id.* at 1228. Under this approach, Jaso's all-inclusive offer of $20,000 was more favorable than the judgment based on the jury award of $4,000, as adjusted by the addition of pre-judgment interest, attorney's fees, and costs pursuant to *Farnsworth v. Steiner,* 601 P.2d 266, 272 & n. 14 (Alaska 1979), *rev'd in part on other grounds,* 638 P.2d 181 (Alaska 1981).[12] Jaso offered McCarthy $17,000 above the $3,000 medical expense damages the jury attributed to the accident as compared to the $1,000 non-medical damages award. Therefore, we hold that the superior court erred in denying Jaso attorney's fees under Rule 68, reverse the trial court's attorney's fees award to McCarthy, and remand for an award of attorney's fees to Jaso.

### 3. Prevailing party determination with respect to Estrella's claims

Because we hold that Jaso was the prevailing party under Rule 68, we need not address the alternative arguments presented regarding whether Jaso was the prevailing party with respect to claims brought by

*grounds,* 638 P.2d 181 (Alaska 1981), the proper calculation to determine the comparability of an offer of judgment and a verdict includes adjustment of the verdict by the addition of prejudgment interest earned from the date of the accident until the date of the offer and attorney's fees and costs incurred for that period. The total judgment of $11,598.35 awarded by the trial court included prejudgment interest, attorney's fees and costs from the date of the accident to the date of the judgment. Therefore, Jaso's offer of $20,000 necessarily exceeded the verdict as adjusted under *Farnsworth.*

James McCarthy. We do address, however, Jaso's arguments that the trial court erred in failing to find that he was the prevailing party against Estrella McCarthy, to whom the jury awarded no damages.

McCarthy argues that Jaso never affirmatively requested attorney's fees from Estrella or argued that he was the prevailing party vis-a-vis her claim; McCarthy asserts that Jaso merely opposed McCarthy's motion for fees on this ground. Because Jaso never requested fees from Estrella, McCarthy argues, the issue is not before this court.

Jaso's attorney's fees motion and supporting memorandum were non-specific in requesting fees against the plaintiffs. The memorandum refers to the offer of judgment, which was extended only to James McCarthy. However, in opposing McCarthy's motion for fees, Jaso argued that he had completely defeated Estrella's claim and was therefore entitled to fees as the prevailing party with respect to her claim. This should have clarified whatever ambiguity may have existed for the superior court as to the scope of Jaso's motion for fees. Although the trial court awarded fees to the plaintiffs in its January 11, 1995 order, the January 13 memorandum opinion does not explicitly address Estrella's claim and concludes that "Plaintiff James A. McCarthy is ... 'the prevailing party' in this litigation." In his statement of points on appeal, Jaso appealed the superior court's failure to find him the prevailing party with regard to Estrella. Therefore, this issue is properly before us.

Having defeated Estrella's damages claim, Jaso must be considered the prevailing party with respect to her claim. On remand the superior court must consider this when it calculates Jaso's attorney's fees award.

IV. *CONCLUSION*

We AFFIRM the rulings appealed by McCarthy. We REVERSE the attorney's fees award and REMAND for an award of attorney's fees to Jaso.