Michael L. RICE, Appellant,

v.

Kimberly L. DENLEY, Appellee.

No. S–7342.

Supreme Court of Alaska.

Sept. 26, 1997.

Clifford W. Holst, Law Offices of Clifford W. Holst, Anchorage, for Appellant.

Lloyd I. Hoppner, Hoppner & Paskvan, P.C., Fairbanks, for Appellee.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

## OPINION

RABINOWITZ, Justice.

### I. INTRODUCTION

Michael Rice appeals from a superior court order granting Kimberly Denley's motion to reduce a settlement agreement to judgment. We reverse and remand for further proceedings.

### II. FACTS AND PROCEEDINGS

In January 1993 Kimberly Denley and Michael Rice were involved in an automobile accident. As a result of the accident Denley incurred medical expenses, $6,780 of which were paid by her first-party insurer, Colonial Insurance Company of California. Denley thereafter filed a complaint against Rice alleging negligence and seeking compensation for her medical expenses (without excluding medical expenses which had been paid by her insurer), lost wages, pain and suffering, and other damages.

Rice was insured by Allstate Insurance Company. In April 1993, before Denley instituted suit against Rice, Colonial advised Lloyd Hoppner (Denley's attorney in the Rice litigation) that "we will pursue our own subrogation with Allstate Insurance in this matter." Over the course of the next year, Colonial wrote Allstate on three occasions, seeking reimbursement for the medical expenses it paid on behalf of Denley. Colonial's final letter in this series stated in part: "After your investigation, please let us hear from you concerning payment of our subrogation claim. We do not want your settlement check issued jointly to our insured and Colonial Insurance Company of California." It also appears that Colonial and Allstate agreed to submit to arbitration Colonial's subrogation claim. Rice asserts that he was unaware of the communications between Allstate and Colonial regarding the latter's efforts to have Allstate reimburse it for the Denley medical expenses it had paid.

In 1994 Denley filed for voluntary bankruptcy. In her bankruptcy petition Denley listed Colonial as a potential creditor in connection with a "[p]ossible claim" related to her automobile accident for an unknown and disputed amount.[1]

On April 14, 1995, a settlement conference was held before Superior Court Judge Richard Savell. Denley and her attorney were present, as were Rice's attorney and a representative of Allstate. The parties purported to reach a settlement in open court for "the full total sum of $20,000 full, normal releases."[2] Just prior to the conclusion of the in-court proceedings, Rice's attorney (Clifford Holst) inquired: "I just want to make sure it's clear. This would include any and all liens and costs and fees incurred?" Judge

---

1. Denley's Schedule F listing of creditors filed in the bankruptcy case also listed Allstate for an unknown amount in regard to its "[p]ossible claim for attorney fees re auto accident," as well as Michael and Eileen Rice for an unknown amount for a potential claim if Denley lost her suit against Rice.

2. Judge Savell's statement reads in full as follows:

[W]e've conducted a settlement conference. We're on the record to put the settlement on the record. The case will settle, Counsel, as I understand it for the full total sum of $20,000 full, normal releases, and it is subject to approval by the Trustee in Bankruptcy, but that approval or disapproval will not reopen negotiations. Correct?

Savell replied "Yes," and Denley's attorney responded, "Yeah. Well, those have all been discharged by the bankruptcy."

Subsequently, on April 18, 1995, Rice's attorney wrote to Denley's attorney, stating that Denley "will have the responsibility to deal with Colonial on the first-party lien." Counsel for Denley responded, stating in part:

> We did not state on the record that my client would "have the responsibility to deal with Colonial on the first-party lien." We did state on the record that my client would be responsible for any "liens." Colonial does not have a "lien." Colonial asserted a right of subrogation under its policy....

Counsel for Rice responded with a letter and a check for $15,000.30, stating, "This is the sum owed your client, less the amount owed Colonial."

Denley then moved for an order reducing the settlement agreement to judgment. Rice opposed the motion, contending that there was a material issue of fact as to settlement terms, and that the settlement was therefore unenforceable. After hearing oral argument, Superior Court Judge Mary E. Greene granted the motion to reduce the settlement to judgment, ruling that the settlement agreement included only liens, and that liens and subrogated claims were "two different things." [3]

The superior court then entered judgment on Denley's motion. The superior court's judgment also included prejudgment interest from April 18, 1995, and an award of $514.52 in attorney's fees.

Rice now appeals from this judgment.

**3.** Judge Greene ruled as follows:

> I find that the parties reached an agreement for the payment of $20,000.00 for the full total sum, and that that was to include any and all liens and costs and fees. The fact of an agreement, I believe, is absolutely clear from the record, and there is no material fact as to what those terms are. What there is an issue as is to what those terms mean, and as I read Pavek and the other cases involving settlement agreements, what that means is that there is a dispute as to the meaning of the term as to whether or not it should—whether the term, "liens," includes a subrogated claim.... Clearly, whatever the plaintiffs owed someone

## III. STANDARD OF REVIEW

In ruling upon a motion to enter judgment on a settlement agreement reached on the record, the superior court "has discretion to deny the motion if the court determines that material issues of fact exist as to the existence of the settlement agreement or to a material term of the settlement." *Pavek v. Curran*, 754 P.2d 1125, 1126 (Alaska 1988). Accordingly, we review the superior court's ruling for clear abuse of discretion. *Barber v. Barber*, 837 P.2d 714, 716 n. 2 (Alaska 1992).

## IV. DISCUSSION

### A. Did the Parties Enter Into a Settlement?

In *Interior Credit Bureau, Inc. v. Bussing*, 559 P.2d 104, 106–07 (Alaska 1977), we said that

> where there is no dispute as to the material terms of a settlement, the provisions of Civil Rule 81(e) are met if both parties admit either in writing filed with the clerk or orally in open court that a settlement had been reached.[4]

Before this court, Rice contends that the superior court erred in holding that he had agreed to settle the Denley litigation on terms that excluded Colonial's interest. Rice further argues that his reasonable expectations were that the settlement would extinguish all claims arising out of the Denley litigation. In support of this contention, Rice asserts he was aware of Denley's pending bankruptcy case and the fact that in the

> else, which was what a lien would necessarily be, could have been discharged in that bankruptcy, and if it was what the plaintiffs owe the insurance company versus what the insurance company is owed by another insurance company, those are two different things, and that appears to me what was being discussed on the record and was agreed to by all parties.
>
> By virtue of that, I will grant the motion to reduce the settlement agreement to writing.

**4.** A settlement is a contract "provided that it meets minimal contractual requirements." *Singh v. State Farm Mut. Auto. Ins. Co.*, 860 P.2d 1193, 1199 (Alaska 1993).

bankruptcy court Denley had identified Colonial as a creditor. Rice additionally argues that the terms "lien" and "subrogation claim" have been used interchangeably, citing 3 Marilyn Minzer et al., *Damages in Tort Actions,* § 17.21[2], at 17–77, –[3], at 17–82 (1991), and notes that Colonial would have a lien on any monies recovered by Denley.

Rice asks that this court hold that no contract was formed, or if we conclude that a settlement agreement was reached that excluded Colonial's medical payment interest, that we grant him rescissionary relief on the basis of either Rice's unilateral mistake as to a material term, or void the agreement on the basis of the parties' mutual mistake. Alternatively, Rice argues that since there exists a disputed factual issue as to the parties' intent to form a contract on the terms stated by the superior court, the case should be remanded for trial.

Denley, in turn, argues that the superior court's judgment should be sustained since no issue of material fact as to the terms of the settlement has been raised. Denley emphasizes that the term "lien" is a well-defined legal word of art and that Colonial never possessed either a statutory, equitable, or contractual lien. In this regard, Denley states that not only has she declined to sue for the subrogree's claim, but that Colonial has specifically advised both Denley and Allstate that it would prove its own subrogation claims, and is pursuing these claims against Allstate in arbitration proceedings.

■ Based on our study of the record, we think that Rice has made out a strong case for reversing the superior court's holding that the settlement agreement contemplated that Denley would not pay Colonial's claim from the settlement proceeds. We reach this conclusion for the following reasons.

First, it is clear that the terms "lien" and "subrogation lien" are used interchangeably. Our own decisions reflect this usage. In *Grow v. Ruggles,* 860 P.2d 1225, 1226 (Alaska

1993), Grow drove his vehicle into Ruggles's vehicle, and Ruggles's insurer paid some of her medical bills out of her medical payment policy. We stated that Ruggles's insurer "thereafter claimed a lien and subrogation rights against Grow's liability policy." *Id.* In determining whether Ruggles owed Grow attorney's fees under Alaska Civil Rule 68(b)(1), we recognized that Grow's settlement offer required Ruggles to reimburse her insurer for the payments she had received for her medical bills. *See id.* at 1227–28. In *Jaso v. McCarthy,* 923 P.2d 795, 802 n. 11 (Alaska 1996), this court affirmed its characterization of Ruggles's insurer's interest as a "subrogation lien." We said, "Allstate Insurance … asserted a subrogation lien against the defendant's liability policy for payments made to cover the plaintiff's medical expenses." *Id.* *Grow* and *Jaso* demonstrate that "subrogation lien" has been used to refer to the type of interest Colonial possesses.[5]

Second, when Colonial paid Denley's medical expenses, it in effect received an assignment by operation of contract and law of Denley's claim (to the extent of payment) against Rice. In the event Rice or Allstate transferred funds in settlement of Denley's claim, including the portion which had been subrogated to Colonial, Colonial had a claim on these funds to the extent of its payment. Such a claim could be enforced either as a constructive trust or as an equitable lien. *See* Restatement of Restitution §§ 160–161 (1937). All of this demonstrates that there are circumstances in which a subrogated claim can accurately be described as imposing an encumbrance on the settlement funds; it thus falls within the "lien" language of the agreement.

If it was clear that both parties intended that the settlement agreement was only for the nonassigned portion of Denley's claim, there would be no basis for Colonial to assert lien rights against the settlement proceeds.

---

**5.** One commentator notes that there is "confusion of subrogation and liens." 3 Marilyn Minzer et al., *Damages in Tort Actions* § 17.24[5], at 17–145 (1991). The commentator states:

> [A]n insurer may exercise its right of subrogation through a variety of procedural devices,

including a direct action against a tortfeasor, intervention on insured's third party action, exercise of a lien, or an action against the insured for reimbursement.

*Id.* at § 17.21[2], at 17–77.

Whether the parties so intended is unclear. Rice's attorney used the lien language and, as noted above, subrogation rights can give rise to liens on settlement proceeds. Further, Denley's complaint included a request for medical expenses without excluding medical expenses which had been paid by her insurer.

These facts are favorable to Rice's position. However, in Denley's favor, we note that Colonial asserted a claim against Allstate; this indicates that Colonial intended to pursue subrogation separate from Denley's complaint. It is possible that Rice knew, or should have known, that Denley's claim did not encompass Colonial's subrogated interest. We conclude that this possibility requires a remand to the superior court to determine whether the parties reached a meeting of the minds, rather than a ruling as a matter of law that the settlement included Colonial's subrogated claim.[6]

### B. *Prejudgment Interest, Costs, and Attorney's Fees*

Rice also challenges the superior court's award to Denley of prejudgment interest from April 18, 1995, the date of Rice's counsel's letter in which he wrote that Denley was responsible for the "first-party lien" of Colonial. In its order granting prejudgment interest the superior court determined that Denley "is entitled to prejudgment interest from the date of the letter written by Mr. Holst which breached the settlement agreement, April 18, 1995." Rice contends that this date is an inappropriate starting point for the running of prejudgment interest since he "was unaware of any dispute regarding the settlement agreement until Mr. Hoppner replied to this letter approximately six weeks later, denying any responsibility of the plaintiff to repay her insurer and rejecting several sections of the release." [7]

In opposition, Denley argues that the settlement agreement was breached by Rice when, on April 18, 1995, he refused to make full payment to Denley of the settlement amount. We conclude that Denley's position is correct.

At what point prejudgment interest begins to accrue is a question of law subject to this court's independent judgment. *Tookalook Sales and Serv. v. McGahan*, 846 P.2d 127, 129 (Alaska 1993). In cases not involving personal injury, death, or property damage, "all damages 'should carry interest from the time the cause of action accrues, unless for some reason peculiar to an individual case such an award of interest would do an injustice.'" *Id.* (quoting *State v. Phillips*, 470 P.2d 266, 274 (Alaska 1970)). Assuming on remand that the superior court again determines there was a settlement contract entered into between Rice and Denley, and that it did not cover Colonial's claim, we note our agreement with the superior court's ruling that April 18, 1995, is the appropriate date for the commencement of prejudgment interest. April 18, 1995, marks both the time for performance under the settlement contract and the date that Denley's cause of action for breach of the settlement agreement accrued.

The superior court also awarded Denley attorney's fees and costs associated with her motion to reduce the settlement agreement to judgment. Alaska Civil Rule 82(a) provides that "the prevailing party in a civil case shall be awarded attorney's fees...." Alaska Civil Rule 54(d) authorizes the award of costs to the prevailing party. Because the money judgment in this case merely represented enforcement of the prior settlement agreement, and because the attorney's efforts needed to obtain relief were minimal, the superior court varied the award of attorney's fees called for by Rule 82(b)(1) and awarded Denley $514.52, or thirty percent of her attorney's fees incurred after April 18, 1995.[8]

---

**6.** As a consequence of this holding, we conclude that it is unnecessary to address any other issue raised by the parties concerning the validity of the settlement agreement.

**7.** Rice additionally argues that if there was any breach of the settlement agreement, it did not occur until defense counsel sent Denley a check

for $15,000.30 for full satisfaction of the settlement.

**8.** The superior court ruled as to attorney's fees and costs as follows:

Plaintiff is entitled to attorney fees under Civil Rule 82. The court finds that an award of

**502**

■ This court will reverse an award of attorney's fees only if the award is arbitrary, capricious, manifestly unreasonable, or the result of an improper motive. *Mount Juneau Enter., Inc. v. Juneau Empire*, 891 P.2d 829, 834 (Alaska 1995). If upon completion of the remand proceedings it is determined that Denley is the prevailing party, then Denley is entitled to an award of attorney's fees based on Denley's attorney's services subsequent to the date of the remand. (Such an award would be in addition to the $514.52 attorney's fee award that was originally granted to Denley.)

damages under Rule 82(b)(1) should be varied because it would not be equitable to do so since the money judgment resulting here is merely enforcement of the settlement and the attorney's work necessary to obtain the recovery is small. Accordingly, the court will award 30% of plaintiff's attorney fees incurred after

**V. CONCLUSION**

The judgment of the superior court is REVERSED and REMANDED for further proceedings not inconsistent with this opinion.

April 18, 1995. Counsel must submit detailed information regarding the billings. Costs incurred after April 18, 1995, are to be awarded by the clerk of court.