BROOKS RANGE EXPLORATION
COMPANY, INC., Appellant,

v.

Wallace GORDON, Thelma Peterson, and
the Gordon Family Trust, Appellees.

No. S–9600.

Supreme Court of Alaska.

May 2, 2002.

Jay D. Durych, Jones & Colver, LLC, Anchorage, for Appellant.

Teresa S. Ridle, Koval & Featherly, P.C., Anchorage, for Appellees.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

## OPINION

EASTAUGH, Justice.

## I. INTRODUCTION

In a settlement agreement, Brooks Range Exploration Company, Inc. (BREXCO) agreed to transport Wallace Gordon's property to Anchorage, unless transporting it would violate state law. The superior court enforced this agreement without holding an evidentiary hearing, notwithstanding BREXCO's assertion that transporting the property would violate the Alaska Historic Preservation Act (AHPA). Because there were genuine factual issues about whether transporting items found by Gordon would violate the AHPA, we hold as to the "found" items that it was error to enforce the agreement without conducting an evidentiary hearing. We therefore reverse and remand as to those items that Gordon claimed he found. We affirm the enforcement order as to those items Gordon claims he purchased or received as gifts or in trade.

## II. FACTS AND PROCEEDINGS

Until July 13, 1998, Wallace Gordon, Thelma Peterson, and the Gordon Family Trust were shareholders of Brooks Range Exploration Company, Inc. (BREXCO). BREXCO is an Alaska corporation engaged in exploring and developing hard-rock mining claims in Alaska. Gordon, Peterson, and the Gordon Family Trust were also shareholders of Brooks Range Ventures, Inc. (BREVCO),

which engaged in placer mining in the Brooks Range.

In 1995 BREXCO filed a superior court complaint against Gordon, Peterson, the Gordon Family Trust, and others; as amended, the complaint alleged numerous causes of action, including breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duties, and usurpation of corporate opportunities and interests. BREVCO intervened as a plaintiff in 1996.

On July 13, 1998 BREXCO and BREVCO each executed separate settlement agreements with the defendants, including Gordon, Peterson, and the Gordon Family Trust. Especially pertinent to this appeal is paragraph five of the BREVCO settlement agreement, which provides:

> WALLACE E. GORDON has identified certain personal property [mining equipment] now located at the mining claims of BREVCO.... *BREVCO shall transport said personal property to WALLACE E. GORDON from its present location to Anchorage, Alaska at BREVCO's cost and expense in its "as is" condition on or before April 15, 1999.* Until delivery BREVCO agrees to bear any risk associated with the loss or damage to said personal property. In the event BREVCO fails to deliver the personal property on or before April 15, 1999, and WALLACE E. GORDON institutes suit to enforce this provision of the Settlement Agreement and prevails, BREVCO agrees to pay WALLACE E. GORDON's reasonable, actual attorney's fees. *The responsibility of BREVCO to transport said personal property is contingent upon the transportation of said property not constituting a violation of any state, federal or local law, statute or ordinance.*

(Emphasis added.) BREXCO and BREVCO merged in June 1999. BREVCO's agreement consequently binds BREXCO. We refer to BREXCO and BREVCO collectively as BREXCO.

In an April 1999 letter, BREXCO informed counsel for Gordon, Peterson, and the Gordon Family Trust (collectively the Gordon Family Trust or the trust) that it would not transport Wallace Gordon's mining equipment to Anchorage. BREXCO asserted that transporting the mining equipment would violate the Alaska Historic Preservation Act,[1] and that the settlement agreement therefore did not require BREXCO to transport the equipment. In late April 1999 the Gordon Family Trust filed a motion in the 1995 proceeding to enforce the settlement agreement; it asked the superior court to order BREXCO "to immediately transport Mr. Gordon's personal property to Anchorage."[2] In May BREXCO filed a complaint for declaratory judgment, seeking a "declaration that: a) the property items are historic artifacts, b) title to the property rests with the State of Alaska, c) the property does not belong to Gordon, [and] d) [BREXCO] is not obligated to transport the property to Gordon or to otherwise remove it from its current location...."

The superior court consolidated BREXCO's declaratory judgment action with the 1995 proceeding. On October 12, 1999 the superior court granted the trust's motion to enforce the settlement agreement and ordered BREXCO to transport Gordon's mining equipment to Anchorage before November 15, 1999. The superior court did not conduct an evidentiary hearing before ruling on the trust's motion to enforce.

BREXCO unsuccessfully moved for reconsideration. The superior court entered a final judgment ordering BREXCO to transport Gordon's mining equipment to Anchorage. BREXCO appeals.

## III. DISCUSSION

### A. Standard of Review

We review a ruling on a motion to enforce a settlement agreement for abuse of discretion.[3] The superior court may not summarily enforce a settlement agreement

---

1. AS 41.35.010–.240.

2. The Gordon Family Trust called this motion the "Second Motion to Enforce Settlement Agreement."

3. *Dickerson v. Williams,* 956 P.2d 458, 462 (Alaska 1998) (citing *Rice v. Denley,* 944 P.2d 497, 499 (Alaska 1997)).

without conducting an evidentiary hearing, unless there are no genuine issues of material fact regarding the existence or terms of the agreement.[4] We review de novo the question whether there are genuine issues of fact material to a motion to enforce a settlement agreement.[5]

## B. It Was Error To Grant the Trust's Motion To Enforce the Settlement Agreement Without Conducting an Evidentiary Hearing.

### 1. The Alaska Historic Preservation Act (AHPA)

Whether it was error to grant the Gordon Family Trust's motion to enforce the settlement agreement without conducting an evidentiary hearing depends in part on our interpretation of the Alaska Historic Preservation Act.[6] The legislature enacted the AHPA in 1971[7] "to preserve and protect the historic, prehistoric, and archaeological resources of Alaska from loss, desecration, and destruction so that the scientific, historic, and cultural heritage embodied in these resources may pass undiminished to future generations."[8]

To that end, AS 41.35.020 provides: "The state reserves to itself title to all historic, prehistoric, and archeological resources situated on land owned or controlled by the state, including tideland and submerged land, and reserves to itself the exclusive right of field archeology on state-owned or controlled land." Alaska Statute 41.35.230(2) defines "historic, prehistoric and archeologi-

cal resources" to include "deposits, structures, ruins, sites, buildings, graves, artifacts, fossils, or other objects of antiquity which provide information pertaining to the historical or prehistorical culture of people in the state as well as to the natural history of the state." Alaska Statute 41.35.200(b) states that "[a] person may not possess, sell, buy, or *transport* within the state, or offer to sell, buy, or *transport* within the state, historic, prehistoric, or archeological resources taken or acquired in violation of [the AHPA]...." (Emphasis added.) Finally, AS 41.35.210 provides that a person who is convicted of violating a provision of the AHPA is guilty of a class A misdemeanor, and AS 41.35.220 states that a person who violates a provision of the AHPA "is subject to a maximum civil penalty of $100,000 for each violation."

▪ When are historic, prehistoric, and archeological resources "situated on" land owned or controlled by the state for purposes of AS 41.35.020(a)? WEBSTER'S NEW WORLD DICTIONARY OF THE AMERICAN LANGUAGE defines "situated" as "placed as to site or position; located."[9] Thus, under a literal interpretation of the statute, the mere presence, even if temporary, of a historic, prehistoric, or archeological resource on land owned or controlled by the state would be sufficient to vest title to the item in the state, and to trigger the provisions of the AHPA. But where the literal interpretation of a statute would lead to absurd results, courts can in-

---

4. *Callie v. Near,* 829 F.2d 888, 890 (9th Cir.1987) ("Where material facts concerning the existence or terms of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing."); *see also Miller v. Manuel,* 9 Haw.App. 56, 828 P.2d 286, 291–92 (1991) (holding that motions to enforce disputed compromise agreements are treated as motions for summary judgment); *cf. Rice,* 944 P.2d at 499 ("In ruling upon a motion to enter judgment on the record, the superior court 'has discretion to deny the motion if the court determines that material issues of fact exist as to the existence of the settlement agreement or to a material term of the settlement.'" (quoting *Pavek v. Curran,* 754 P.2d 1125, 1126 (Alaska 1988))); *Acevedo v. Burley,* 944 P.2d 473, 476 n. 2 (Alaska 1997) (holding that evidentiary hearing is not required in judi-

cial proceeding in absence of genuine issue of material fact).

5. *See Miller,* 828 P.2d at 291–92 (holding that motions to enforce disputed compromise agreements are treated as motions for summary judgment); *Mathis v. Sauser,* 942 P.2d 1117, 1120 (Alaska 1997) (holding that grants of summary judgment are reviewed de novo).

6. AS 41.35.010–.240.

7. Ch. 130, § 1, SLA 1971.

8. AS 41.35.010.

9. WEBSTER'S NEW WORLD DICTIONARY OF THE AMERICAN LANGUAGE 1332 (2d ed.1978).

terpret the words of the statute to agree with the intention of the legislature.[10]

■ Here, a literal interpretation of the phrase "situated on" in AS 41.35.020(a) could lead to absurd results. For example, it seems unlikely that the legislature intended that title to personal property that qualifies as a historic, prehistoric, or archeological resource under AS 41.35.230(2) would pass to the state simply because its owner transported the property across state-owned or controlled land, and the property was only temporarily located on state land. We therefore interpret the AHPA to apply only to *abandoned* historic, prehistoric, or archeological resources situated on land owned or controlled by the state. Indeed, even BREXCO's brief states: "BREXCO suspects ... that when the Alaska Historic Preservation Act was adopted the Alaska legislature intended that the Act be construed in harmony with existing law, including the statutory and common law pertaining to abandoned property and escheat."

■ "Abandoned property" is property whose owner has manifested an intention to relinquish all title, possession, or claim to the property.[11]

## 2. Genuine issues of material fact could not be resolved without an evidentiary hearing.

In deciding whether to enforce an alleged settlement agreement without conducting an evidentiary hearing, courts treat the motion to enforce as a summary judgment motion.[12] "Thus, the question [on appeal] is whether the evidence presented to the trial court indicated that there was no genuine issue of material fact and that as a matter of law the parties had entered into a valid compromise agreement."[13]

■ A party seeking summary judgment must demonstrate the absence of a genuine material factual dispute and entitlement to judgment as a matter of law.[14] In support of its motion to enforce the settlement agreement, the trust submitted the affidavit of Wallace Gordon. In his affidavit, Gordon stated: "I purchased *most* of the items [of mining equipment located on BREVCO's mining claims] and other items were loaned to me. *Only a few of the items on the list were found by me and I found them on my own mining claims.*" (Emphasis added.) Gordon also attached to his affidavit a handwritten document which listed all of the items and described the source of each item. Because Gordon's affidavit and his attached list indicated that he had found some of the items,[15] the trust did not meet its initial

10. *Sherman v. Holiday Constr. Co.*, 435 P.2d 16, 18–19 (Alaska 1967); *see also* 2A NORMAN J. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 46:07, at 196–97 (6th ed.2000).

11. *Smith v. State*, 510 P.2d 793, 795 (Alaska 1973) (stating that abandonment of property " 'is demonstrated by an intention to relinquish all title, possession, or claim to [the] property, accompanied by some type of activity or omission by which such intention is manifested.' " (quoting Edward G. Mascolo, *The Role of Abandonment in the Law of Search and Seizure: An Application of Misdirected Emphasis*, 20 BUFF. L.REV. 399, 400–01 (1970))); *see also Kile v. Belisle*, 759 P.2d 1292, 1295–96 (Alaska 1988) ("Abandonment is the intentional relinquishment of a mining claim. It is a voluntary act on the part of a claimant and consists of a subjective intent to abandon coupled with an external and objective act by which that intent is carried into effect." (citations omitted)); *cf. King v. Petroleum Servs. Corp.*, 536 P.2d 116, 119 (Alaska 1975) ("The elements of abandonment of real property are an intent to abandon and conduct carrying out that intention."); *D.M. v. State*, 515 P.2d 1234, 1237 (Alaska 1973) ("[I]t may well be that a subjective

intent is determinative when dealing with abandonment of personal property, over which the owner exercises an absolute property right...."); 1 AM.JUR. 2d *Abandoned, Lost, and Unclaimed Property* § 1 (1994) (defining abandoned property as "that to which the owner has voluntarily relinquished all right, title, claim and possession, with the intention of terminating his ownership, but without vesting ownership in any other person, and with the intention of not reclaiming any future rights therein....").

12. *E.g., Miller*, 828 P.2d at 291.

13. *Id.*

14. *Alaska Travel Specialists, Inc. v. First Nat'l Bank of Anchorage*, 919 P.2d 759, 762 (Alaska 1996).

15. For example, the list attached to Gordon's affidavit stated: "[Grizzly gold pan] I found about 4 miles down Wild River after a flood on a gravel bar" and "[Large dump bucket arm]—was located at mine site with other items scattered around."

burden of demonstrating the absence of a genuine factual dispute about whether transporting those items would violate the AHPA. As to the other items, Gordon's affidavit and list made out a prima facie showing that they were not subject to the AHPA.

Even if a summary judgment movant has made out a prima facie showing that there is no genuine issue of material fact, the nonmoving party may avoid summary judgment by producing competent evidence establishing that a genuine factual dispute exists.[16] BREXCO responded to Gordon's affidavit with the affidavit of Naomi Costello. Costello affied:

> When I first visited [BREVCO's mining operation], Gordon was living in an old cabin. I noticed that there were old mining tools, lanterns, utensils, pots, buckets, an anvil, and other items spread around the yard and leaning against the old cabin. The items were obviously very old. They were worn, weathered, and rusted, and many of them had old-fashioned wooden handles.

Costello's affidavit also stated: "Gordon told me that *he had gathered the items from various drift mines in the area.* ... On occasion when I visited, [Gordon] would show me new items that he had gathered and *he would tell me which old mining site he had collected them from.*" (Emphasis added.)

Costello's affidavit tended to support Gordon's statement that he had found some of the items he kept in and around his cabin. As to items Gordon said he had found, Costello's affidavit demonstrates that there is a genuine factual dispute about whether the found items fall within the AHPA.

■ Costello's affidavit does not assert that Gordon actually found the items that he had described as having purchased or received. Costello's affidavit therefore creates a genuine, material factual dispute only as to items Gordon admitted he found or Costello expressly claimed Gordon found. Because Costello's affidavit did not create a genuine factual dispute about whether the AHPA applied to items Gordon claimed he received by gift, trade, or purchase, the court did not err in enforcing the transportation agreement as to those items. But because there was a genuine factual dispute about whether transporting the found items would violate the AHPA, it was error to enforce the transportation agreement without conducting an evidentiary hearing as to the found items.[17]

■ The Gordon Family Trust argues that Costello's affidavit is irrelevant and thus inadmissible[18] because "(1) there is nothing in her Affidavit to indicate that the items she describes are the same items BREXCO agreed to transport in the Settlement Agreement; (2) there is nothing in Ms. Costello's Affidavit to show that the pieces of mining equipment are items covered by the Alaska Historic Preservation Act." The trust also argues that "the Court was free to disregard her opinion testimony because BREXCO presented no evidence that Ms. Costello is a mining expert or that she is competent to testify as to the age and ownership of these items." These arguments are not well taken.

"Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[19] Costello's affidavit was relevant because it tended to establish that at least some of the disputed items were abandoned when Gordon found them. That proposition

---

**16.** *Lane v. City of Kotzebue,* 982 P.2d 1270, 1272 (Alaska 1999).

**17.** BREXCO argues that Don Cloyd's affidavit also raised genuine issues of material fact precluding the summary enforcement of the settlement agreement. The Gordon Family Trust responds that because the Cloyd affidavit was submitted in support of BREXCO's motion for reconsideration, which, the trust argues, "did not contain any legal proposition that differed from those originally raised in opposition to the motion for summary judgment," BREXCO may not rely on the affidavit on appeal. We agree with the trust. The new factual material submitted with the reconsideration motion cannot be the basis for claiming the superior court erred. Alaska R. Civ. P. 77(k).

**18.** *See* Alaska R. Civ. P. 56(e) ("Supporting and opposing affidavits ... shall set forth such facts as would be admissible in evidence....").

**19.** Alaska R. Evid. 401.

in turn was relevant to determining whether the items were protected by the AHPA. Costello's affidavit did not specifically indicate whether the items it listed were the same as the items contemplated by the settlement agreement; but her affidavit was nonetheless germane as to those items that Gordon conceded he found. Moreover, because Costello's affidavit did not rely on "scientific, technical, or other specialized knowledge,"[20] it did not require a foundation establishing Costello as a mining expert. Indeed, the most relevant portions of Costello's affidavit simply described Gordon's statements regarding the source of the old mining equipment.

The trust argues that the language in paragraph five of the settlement agreement concerning the legality of transporting the mining equipment is a condition precedent which is unenforceable because the condition "is simply not sufficiently unambiguous to be construed as a condition precedent."[21] We are unpersuaded by this argument. Paragraph five expressly states that BREXCO's performance is *"contingent upon* the transportation of [the mining] property not constituting a violation of any state, federal or local law, statute or ordinance." (Emphasis added.) This provision is not ambiguous in context of this case.

We conclude that there are genuine issues of material fact about whether the AHPA prohibits transporting the found items. We therefore reverse the enforcement order with respect to the found items and remand for an evidentiary hearing to determine whether transporting those items would violate the AHPA. But because there is no genuine issue of material fact regarding the legality of

transporting the rest of Gordon's items, we affirm the enforcement order with respect to the equipment Gordon did not find.

### C. Attorney's Fees

Paragraph five of the settlement agreement provides for an award of reasonable, actual attorney's fees "[i]n the event BREVCO fails to deliver the personal property on or before April 15, 1999, and WALLACE E. GORDON institutes suit to enforce this provision of the Settlement Agreement and prevails." The superior court's 1999 final judgment and 2000 corrected final judgment included an award of $8,789.72 to the Gordon Family Trust, apparently for attorney's fees. BREXCO argues that if we reverse the order enforcing BREXCO's obligation under the settlement agreement to transport Wallace Gordon's mining equipment to Anchorage, we must also vacate the attorney's fees award based thereon. We agree. Having partially reversed the order granting the trust's second motion to enforce the settlement agreement, we must vacate the award of attorney's fees incurred in bringing that motion.[22] We follow the procedure we recently outlined in *Gamble v. Northstore Partnership*[23] and award nominal fees in this appeal,[24] leaving it to the superior court on remand to award reasonable, actual fees per the contract.

BREXCO also urges us to vacate the superior court's March 10, 2000 award of reasonable, actual attorney's fees incurred as a result of the Gordon Family Trust's third motion to enforce the settlement agreement.[25] BREXCO argues that the March 10, 2000 award is "dependent on, and would not have been entered absent" the superior

---

**20.** Alaska R. Evid. 702.

**21.** *Norton v. Herron,* 677 P.2d 877, 882 (Alaska 1984) (holding that conditions precedent will not be enforced unless they are "expressed in plain, unambiguous language or arise by clear implication" (citations omitted)).

**22.** *Wood v. Collins,* 812 P.2d 951, 957 (Alaska 1991).

**23.** 28 P.3d 286, 293 (Alaska 2001) ("Where appeals are not dispositive on the merits but merely stepping stones to an as-yet-unknown final result,

and where there is a statutory or contractual provision calling for an award of full attorney's fees to the party who ultimately prevails, full fees for work on appeal can best be assessed in the trial court at the conclusion of the case.").

**24.** Appellate Rule 508(e) ("Attorney's fees may be allowed in an amount to be determined by the court.").

**25.** The superior court awarded the Gordon Family Trust reasonable, actual attorney's fees of $9,344 "incurred in enforcing BREVCO's settlement obligations for a third time."

court's order granting the trust's second motion to enforce the settlement agreement. But the trust's third motion sought an order enforcing BREXCO's obligation under the settlement agreement to pay the trust $38,089.28 annually. The third motion was thus unrelated to the second motion, which sought to enforce BREXCO's obligation to transport Gordon's mining equipment. We therefore decline to vacate the March 10, 2000 award of reasonable, actual attorney's fees incurred in bringing the third motion to enforce the settlement agreement.

## IV. CONCLUSION

For these reasons, we REVERSE the order requiring BREXCO to transport Gordon's found mining equipment to Anchorage, and REMAND for further proceedings in accordance with this opinion. We also VACATE the award of attorney's fees granted in the transportation dispute. We AFFIRM the enforcement order to the extent it required BREXCO to transport Gordon's other items, and AFFIRM the trust's award of attorney's fees in the dispute about annual payments.