STATE of Alaska, DIVISION OF AGRI-
CULTURE, AGRICULTURAL RE-
VOLVING LOAN FUND, Appellant,

v.

Wayne M. CARPENTER, Appellee.

No. S–5228.

Supreme Court of Alaska.

March 4, 1994.

Rehearing Denied March 31, 1994.

Richard L. Musick, Asst. Atty. Gen., Fair-
banks, and Charles E. Cole, Atty. Gen., Ju-
neau, for appellant.

Joe P. Josephson, Anchorage, for appellee.

Before MOORE, C.J., and RABINOWITZ,
MATTHEWS and COMPTON, JJ.

*OPINION*

COMPTON, Justice.

This case arises out of the purchase of, and failure to pay for, agricultural lands and agricultural loans. The State appeals the superior court's denial of its motion for a directed verdict on Carpenter's claim that his duty to pay on the loans was discharged based upon the theories of mutual mistake, commercial impracticability and misrepresentation. The State also appeals the superior court's denial of its motion for a directed verdict on Carpenter's counterclaim based on misrepresentation as to the underlying land sales contract. We reverse.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

In April 1978 Wayne Carpenter purchased land from the Division of Lands of the Department of Natural Resources (DNR). In April 1981 he purchased more land from DNR. Both land sale contracts contained the same disclaimer:

> The Seller makes no warranty, express or implied, nor assumes any liability whatsoever, regarding the social, economic, or environmental aspects of the Parcel, to include, without limitation, the soil conditions, water drainage, or natural or artificial hazards.

The contracts also disclaimed any guaranty of profitability. In addition, the contracts included farm conservation or development plans, requiring the buyer to improve and develop the land as a working farm. In 1980 and 1983 Carpenter borrowed money from the Agricultural Revolving Loan Fund (ARLF), a state agency created within DNR for the purpose of lending money to farmers to help them develop their land.

Carpenter made repeated efforts over the years to plant, but these efforts were unsuccessful. Spring flooding of the land became a perennial problem. As soon as the ground thawed in June, the water table rose and the land became too wet to support the equipment required for planting. In 1987 Carpenter abandoned efforts to farm the land. The land was reclassified as unsuitable for agriculture. Carpenter ceased making payments toward his ARLF loans.

ARLF filed an action for damages, repossession and foreclosure. Carpenter filed an answer claiming he was excused from performing under the contracts, along with counterclaims based upon allegations of negligence, misrepresentation, mutual mistake of fact and breach of contract. The superior court granted the State's directed verdict motion on the claims of negligence and breach of contract, but denied the motion as to misrepresentation, mutual mistake of fact and commercial impracticability. The jury found that Carpenter was excused from his duty to repay the loans because of mutual mistake, commercial impracticability and misrepresentation. The jury also found that Carpenter proved his counterclaim of misrepresentation. The court, sitting without a jury for the purpose of considering equitable restitution, made decisions concerning the property to be returned to the State and the State's monetary obligation to Carpenter. Final judgment was entered in June 1992. The State appeals.

## II. *DISCUSSION*

### A. STANDARD OF REVIEW.

In reviewing a ruling on a motion for a directed verdict, this court determines "whether the evidence, when viewed in the light most favorable to the non-moving party, is such that reasonable [people] could not differ in their judgment." *Holiday Inns of Am., Inc. v. Peck,* 520 P.2d 87, 92 (Alaska 1974).

### B. THERE WAS INSUFFICIENT EVIDENCE UPON WHICH A REASONABLE JURY COULD HAVE FOUND MUTUAL MISTAKE OF FACT.

Carpenter contends that both he and the State held an honest but mistaken belief that the land could be farmed. He argues that he was not consciously uncertain of the suitability of the land for agriculture. He further contends that the "disclaimer" clauses were "boilerplate" clauses in form contracts. In addition, Carpenter argues that the jury could have reasonably inferred that because the loans were given to develop the land,

there was a mutual mistake on the part of both parties as to the suitability of the land for agriculture.

The State contends that the disclaimer clauses are unrebutted evidence of Carpenter's awareness of the possibility that the land might not be suitable for agriculture. Further, the disclaimers placed the risk of potential problems with the land on Carpenter. The State also argues that there was no showing that the character of the land was part of the "basic" assumption of the loan contracts. The State emphasizes that the record is devoid of any evidence that the loans were to be paid from Carpenter's agricultural earnings, "or that they were in any way linked to the success of Carpenter's farming efforts."

■ Under Alaska law,

[j]udicial relief from the provisions of a contract on the basis of mutual mistake is proper where there was a mistake of both parties at the time of contracting as to a basic assumption on which the contract was made; the mistake had a material effect on the agreed exchange of performances, and the party seeking relief did not bear the risk of the mistake.

*Mat–Su/Blackard/Stephan & Sons v. State,* 647 P.2d 1101, 1104 (Alaska 1982); *Fowler v. City of Anchorage,* 583 P.2d 817 (Alaska 1978). We agree with the State that the law distinguishes between mistakes concerning the nature of the subject matter of a contract and conscious uncertainty concerning that nature. John D. Calamari & Joseph M. Perillo, *Contracts* § 9–26, at 382 (3d ed. 1987). "Where there is conscious uncertainty there is an assumption of the risk that the resolution of the uncertainty may be unfavorable." *Id.*

The State correctly asserts that the detailed disclaimers of warranty as to the condition of the land demonstrate that Carpenter was consciously uncertain as to the character of the land. Furthermore, the State correctly contends that even if Carpenter was not consciously uncertain as to the character of the land, he failed to demonstrate that he did not contractually bear the risk of the mistake. *See Mat–Su,* 647 P.2d at 1101, 1104–05.

The disclaimers in the land sale contracts place the risk of the condition of the land on Carpenter. The contracts provide: "The Seller does not warrant by such classification that the land is suited for [agricultural] use, nor does the Seller make any warranty, express or implied, that the use by the Purchaser under such classification shall be profitable." In addition, a contractual provision provided that Carpenter had examined the description of the parcel, "had inspected the parcel, or had voluntarily declined to do so, and was satisfied with [its] description and condition." These provisions demonstrate that the risk of the condition of the land was allocated to Carpenter.

Although both parties may have intended that the land be developed for agricultural purposes, the disclaimers in the land sale contracts stand as unrebutted evidence that both parties were consciously uncertain of the suitability of the land for such a purpose. In addition, Carpenter contractually bore the risk of the condition of the land. The discharge of Carpenter's duty to pay the ARLF loans, based on mutual mistake, cannot stand. Therefore, we hold as a matter of law that the superior court should have granted the State's motion for a directed verdict as to the mutual mistake of fact claim.

C. THERE WAS INSUFFICIENT EVIDENCE UPON WHICH A REASONABLE JURY COULD HAVE FOUND COMMERCIAL IMPRACTICABILITY.

Carpenter argues that he never assumed the risk that his land would be unsuitable for agriculture. Carpenter argues that a basic assumption, both in buying the land and in borrowing money from the ARLF, was that the land could be developed as agricultural land. Therefore, when it became clear that the land was not suitable for agriculture, the purpose of the contracts was frustrated. Carpenter also claims that the impracticability of payment falls within the scope of commercial impracticability. Because farming his land was no longer a viable option, he contends that it was impracticable to pay off the ARLF loans.

The State argues that the only performance required of Carpenter was to repay the loans. The State claims that commercial impracticability looks to the nature of the performance required, not the financial resources of the debtor. Here, when the only duty to be performed was repayment of a loan, commercial impracticability is inapposite. Also, the State again argues that the disclaimers evidence that there was no mutual mistake that the land would be suitable for agriculture or that it would be profitable.

■ In order for Carpenter to be excused from performing under the loan contracts on the theory of commercial impracticability he must show that his "performance under [the contracts was] impracticable without his fault because of a fact of which he [had] no reason to know and the non-existence of which [was] a basic assumption on which the contract[s] [were] made." Restatement (Second) of Contracts § 266(1) (1981). We find that Carpenter fails to meet these requirements.

■ As discussed *supra*, the facts do not support Carpenter's contentions. The disclaimers in the land sale contracts disclaim any warranty as to the soil condition or profitability of the land purchased by Carpenter. The disclaimers make it clear that any problems in these areas were not unanticipated. Carpenter assumed the risk of the condition of the land that he purchased. Therefore, the feasibility of farming the land as well as the profitability resulting from the farming cannot be fairly categorized as a "basic assumptions" on which the contracts were made. Furthermore, the continuation of a party's financial solvency ordinarily is not a basic assumption on which contracts are made. *See* Restatement (Second) of Contracts § 261 cmt. a (1981). In addition,

the condition of the land does not make repayment of the loans impracticable, only more difficult because farming the land has not been profitable. There was nothing in the loan contracts conditioning repayment on the profitability of the farming venture. Therefore, Carpenter's duty to pay on the ARLF loans was not discharged on the basis of commercial impracticability. We hold as a matter of law that the superior court should have granted the State's motion for a directed verdict as to the commercial impracticability claim.[1]

## D. THERE WAS NO EVIDENCE UPON WHICH A REASONABLE JURY COULD HAVE FOUND MISREPRESENTATION.

■ Under Alaska law,

In order to avoid a contract on the ground of misrepresentation, a party must show four things: 1) that there was a misrepresentation, 2) which was fraudulent or material, 3) which induced the party to enter the contract, and 4) upon which the party was justified in relying.

*Bering Straits Native Corp. v. Birklid,* 739 P.2d 767, 768 (Alaska 1987).

Carpenter attempted to avoid his duty to repay the ARLF loans and also attempted to rescind the land sale contracts based upon the State's alleged misrepresentation of the nature of the land. Carpenter contends that despite the disclaimers in the land sale contracts, the jury could have reasonably found that the State Division of Agriculture, which oversees the "farm program and which, through its agent, [a loan examiner], advised [him] that there was money available to borrow through the ARLF, was holding out by

1. Carpenter also appears to assert a defense based on commercial frustration. The Restatement (Second) of Contracts § 266(2) (1981), provides:

Where, at the time a contract is made, a party's principal purpose is substantially frustrated without his fault by a fact of which he has no reason to know and the non-existence of which is a basic assumption on which the contract is made, no duty of that party to render performance arises, unless the language or circumstances indicate the contrary.

For the same reasons discussed in our analysis regarding commercial impracticability, a defense of frustration cannot prevail. The disclaimers in the loan contracts are evidence that Carpenter was aware that his land potentially could be unsuitable for agriculture. *See, e.g., Smelting, Refining & Mining Co. v. Wigger,* 684 P.2d 850, 857 (Alaska 1984) ("[C]ommercial frustration is no defense if the event was foreseeable."); Restatement (Second) of Contracts § 265 cmt. a (1981) ("The frustration must be so severe that it is not fairly to be regarded as within the risks that [were] assumed under the contract.").

implication that the land to be improved and developed was farmable land." He contends that the purpose of the State's loans to him was the development of his farm, consistent with the development plans incorporated in the land sale contracts.

Carpenter admits that the State's alleged representations that continuous working of the land would dry it out over a period of years were made only *after* he had signed the land sale contracts and borrowed through the notes sued upon.[2] Thus, these representations could not have induced him to enter the contracts. Further, his contention that he was justified in believing that the State would not sell land and make agricultural loans if the land was not suitable for agricultural development is without merit, considering the specific disclaimers in the land sale contracts.

Viewing the evidence and the reasonable inference therefrom in the light most favorable to Carpenter, we conclude that fair minded jurors could not differ as to whether the State misrepresented to Carpenter the suitability of the land for agriculture, thus inducing him to enter into the land sale contracts or to enter into the loan agreements. The superior court erred in not directing a verdict in the State's favor on this misrepresentation claim, since the evidence is insufficient to support it.

## III. CONCLUSION

We conclude that a directed verdict in favor of the State should have been granted on all claims. The decision of the trial court is REVERSED, and the case REMANDED for entry of judgment consistent with this opinion.

---

2. Carpenter later in his brief contends that assurances of the agricultural potential of the land began immediately after the land sales contracts were signed. However, Carpenter does not give specific dates or names of the persons who allegedly gave these assurances.