M. Ashley DICKERSON, aka Mahala Ashley Dickerson, William Andrew, and Mary Andrew, Appellants,

v.

Duke WILLIAMS, Jean Williams, and Matanuska–Susitna Borough, Appellees.

No. S–7871.

Supreme Court of Alaska.

April 17, 1998.

---

M. Ashley Dickerson, Dickerson & Gibbons, Inc., Anchorage, for Appellants.

James T. Stanley, James T. Stanley Corporation, P.C., Anchorage, for Appellees Duke Williams and Jean Williams.

Allan E. Tesche, Russell, Tesche & Wagg, Anchorage, for Appellee Matanuska–Susitna Borough.

Before MATTHEWS, C.J., and COMPTON, FABE and BRYNER, JJ.

## OPINION

COMPTON, Justice.

## I. INTRODUCTION

This is an appeal from an order enforcing an oral settlement agreement after one side refused to sign the papers embodying it. The underlying suit concerns a roadway easement across the land of Duke and Jean Williams to that of M. Ashley Dickerson. The Matanuska–Susitna Borough (Borough) had vacated the public interest in half the easement on condition that the Williamses build an alternate road to Dickerson's land; dissatisfied with the new road, she had sued. She agreed to settle when the Williamses and the Borough promised to pay $6,500 within seven days and to widen the easement so that she could build a new road. Two weeks later, though, she refused to sign the settlement because defendants had missed the seven-day deadline and because, she had learned, the land for the new road includes federal wetlands, which will complicate road-building. The court ordered her to sign, and she appeals. We affirm.

## II. FACTS AND PROCEEDINGS

### A. The Land

William and Mary Andrew subdivided the land at issue in 1976. They recorded a roadway easement, benefitting adjacent owners and the public, across the upper 200' of the Williamses' eventual lot to Dickerson's eventual lot. They apparently made the roadway easement so wide because the upper part of the lot was swampy.

Dickerson bought her lot in 1981.[1] When the Williamses bought their lot in 1986, a road or jeep trail ran over it to Dickerson's lot.[2] The parties dispute whether the road/trail met Borough road standards, whether it lay wholly within the 200' easement, and whether the Williamses intentionally destroyed it in the late 1980s. The road/trail is now blocked and overgrown.

### B. The Federal Suit

In 1990 the Williamses asked the Borough Platting Board to vacate the public interest in most of the 200' easement across their lot. After Borough Deputy Director of Engineering George Strother opined that the easement's upper 100' could support a road, the Platting Board in June 1991 vacated the public interest in the lower 100', contingent on the Williamses providing "equally constructed access" within the remaining upper 100'. The Williamses built a road, Strother approved it, and the Board finalized the vacation.

Upon concluding that the new road was sinking into a swamp, Dickerson, who is African–American, sued in federal court, alleging that the Williamses and Borough officials, who are white, had conspired to deny her the equal protection of the law.[3] The court granted the defendants summary judgment on Dickerson's federal claims for lack of evidence of a conspiracy, and dismissed her pendent state-law claims without prejudice; the United States Court of Appeals for the Ninth Circuit affirmed, and the Supreme Court denied *certiorari*.[4]

### C. The State Suit

While the *certiorari* petition was pending in 1994, Dickerson's then-coplaintiff, William Bocast (who is not a party to this suit), asked the Army Corps of Engineers (Corps) to inspect the new road. The Corps found that the road lay in federal wetlands. It wrote the Williamses in January 1995 that building the road had violated federal law and that any further work on the road would require permits. Dickerson sent a copy of the letter to the Borough's attorney, Allan Tesche, concluding that it was impossible to improve the new road so as to enable Dickerson to subdivide her land. Tesche replied that the need for a permit "does not necessarily preclude ... construction altogether; you simply should comply with federal permitting requirements...." Dickerson did not seek a permit. She sued, seeking, *inter alia*, damages and an order nullifying the vacation of the lower 100' of the public easement.

### D. The Settlement

After a year of litigation, Superior Court Judge Stephanie E. Joannides convened a settlement conference on August 30, 1996. The parties reached a settlement, and the court detailed their agreement on the record.

Dickerson agreed to a release and a dismissal with prejudice. The Williamses agreed to regrant the upper 50' of the half of the public easement that had been vacated (the 50' strip). In other words, the public easement, which had been narrowed from 200' to 100', would be rewidened to 150'. Dickerson could then build a new road primarily in the 50' strip. The parties agreed

---

**1.** Dickerson owns the lot in common with Larry Card, Minnie Card, William Browner, and Pat Browner. The Cards and Browners attended the settlement conference and were to sign the release, but they are not parties. For simplicity we refer to "the Dickerson property" and to "Dickerson" (as owner).

**2.** Dickerson claims that, beyond the current jeep trail, a well-developed road existed, which the Williamses destroyed; the Williamses contend that there was never more than a jeep trail.

**3.** The Board, at a meeting of which Dickerson received no notice, had "clarified" its initial order to explain that "equally constructed" meant

equal to the then-existing jeep trail across the Williamses' lot, not equal to the minimal Borough road standard that would allow Dickerson to easily subdivide her property. Dickerson claimed that racial animus toward her and her African–American co-owners had led the Williamses and the Borough, upon learning of her and her co-owners' intent to subdivide and build homes on their land, to conspire to vacate the public easement and block their access to their land.

**4.** *See Dickerson v. Williams*, No. A92–281, slip op. at 8 (D.Alaska, Mar. 10, 1993), *aff'd*, 29 F.3d 631 (9th Cir.), *cert. denied*, 513 U.S. 963, 115 S.Ct. 424, 130 L.Ed.2d 338 (1994).

that Dickerson would "bear[ ] the risk of any action that the Corps of Engineers might take with respect to the building of the new road." The Borough and the Williamses agreed to pay $6,500 within seven days and $1,500 more within sixty days, and the court directed them to prepare the settlement papers.

Dickerson also said that "with winter approaching ... I'd like to get started right away on constructing this road." The court replied that "it's a matter of getting the paperwork done, and whether it's this week or 10 days from now, I can't imagine that there's gonna be that big of a difference." Dickerson did not object. Dickerson, Judge Joannides, and Tesche then agreed that Dickerson could survey the 50' strip at once, but not begin building until "the paperwork's signed."

### E. The Settlement's Collapse

After the conference, Tesche and the Williamses' attorney began to draft settlement papers. On September 11, twelve days after the conference, Dickerson notified the court that over seven days had passed, but defendants had not tendered the papers or the $6,500. She filed her own proposed settlement stipulation. It said, *inter alia*, that she is "solely" responsible for "clearing" the new road's "freedom from Wetland ... violation" with the Corps. On September 13 Tesche delivered settlement papers to Dickerson.

On September 16 Dickerson moved the court to award her costs and fees; to find defendants in contempt for their lateness; and to enforce the agreement, presumably as embodied in her stipulation. Defendants moved to enforce the agreement as embodied in their papers.

Meanwhile, Dickerson had asked the Corps on September 4 to determine whether the 50' strip includes federal wetlands. On September 23 they told her that it does. She moved the court to nullify the agreement, to modify it to restore the public easement fully

to 200', or to order a new settlement conference.

### F. The Conclusion

Judge Joannides approved defendants' settlement papers and made them "enforceable as an order of [the] Court." She ordered the parties to execute the papers, ordered defendants to tender the $6,500 within three days thereafter, and dismissed the case with prejudice. Judge Joannides never responded to Dickerson's request for sanctions for defendants' lateness. She only alluded to the alleged seven-day deadline once, in her order enforcing the agreement. "[A]s soon as the settlement agreement is signed," she added by hand, "the funds already due shall be paid to plaintiffs within three days...."

Apparently before receiving those orders, Dickerson moved to "finalize" the agreement "with amendments." Claiming "mistake and possible fraud ... as covered by Rule 60(b)," she proposed that the court amend the agreement to restore the entire 200' easement. The court did not respond. Dickerson appeals.

### III. DISCUSSION

#### A. Summary of Issues and Standards of Review

█ Dickerson first argues that the court erred in failing to rule that defendants had materially breached the settlement agreement when they failed to meet the seven-day deadline, and that they thus could not enforce it. We review a court's response to a motion to enforce a settlement agreement for abuse of discretion. *See Rice v. Denley*, 944 P.2d 497, 499 (Alaska 1997). Dickerson also claims, in light of both the missed deadline and the wetlands discovery, that the court was wrong to deny her a new settlement conference under Alaska Civil Rule 59 or relief from the agreement under Rule 60(b). We review denials of such relief for abuse of discretion. *See Nelson v. Jones*, 781 P.2d 964, 968 (Alaska 1989).[5]

5. Dickerson claims to have moved for reconsideration, and appeals the denial thereof. The record, however, contains no such motion, and the court never addressed it. Some time after

Dickerson filed this appeal, the superior court rejected her motion to correct the record on appeal by including her motion for reconsideration, finding that she had "offered no proof spe-

**B.** *The Court Did Not Abuse Its Discretion in Finding that there Was No Material Issue of Fact Concerning the Alleged Deadline.*

Dickerson argues that defendants had agreed to tender the papers and the $6,500 within seven days of the settlement conference; that time was of the essence of that agreement; that missing the deadline was thus a material breach that caused the settlement agreement to "lapse"; and that the court erred in ignoring that breach and unilaterally extending the seven-day deadline.

■ A settlement agreement is a contract "provided that it meets minimal contractual requirements." *Singh v. State Farm Mut. Auto. Ins. Co.,* 860 P.2d 1193, 1199 (Alaska 1993). No one disputes that this agreement does so. "In ruling upon a motion to enter judgment on a settlement agreement reached on the record, the superior court 'has discretion to deny the motion if . . . material issues of fact exist as to . . . a material term of the settlement.'" *Rice,* 944 P.2d at 499 (quoting *Pavek v. Curran,* 754 P.2d 1125, 1126 (Alaska 1988)). In declining to grant Dickerson relief, the court implicitly found no material issue of fact as to the alleged seven-day deadline, a term of the settlement.

Defendants accept Dickerson's claim that the agreement required them to tender the documents and the $6,500 within seven days of the conference.[6] They reject, however, her further claim that time was of the agreement's essence. If it was, their failure to perform by the specified time may well have been a material breach, barring them from enforcing the agreement. *See* Restatement (Second) of Contracts §§ 237, 241(c) (1981).[7] In terms of *Rice* and *Pavek,* the seven-day deadline concededly was a term of the agreement, and the question is whether it was a material term, so that a genuine dispute about it would bar entry of a judgment enforcing the agreement.

■ The court did not abuse its discretion in treating the seven-day term as immaterial. The contract—i.e., the settlement conference transcript—unambiguously did not make time of the essence.[8] Dickerson unilaterally stressed that she wanted to start building as soon as possible, but the judge demurred, replying that whether defendants "get[ ] the paperwork done . . . this week or 10 days from now . . . can't [make] . . . that big of a difference." Dickerson did not object.[9] Tesche acceded to Judge Joannides' request to let Dickerson begin *surveying* at once, but never manifested acceptance of Dickerson's suggestion that time was essential. Neither

---

cifically indicating that the disputed documents were ever actually filed." We need not consider whether Judge Joannides abused her discretion in not granting a motion that Dickerson cannot prove that the judge ever saw.

Dickerson also briefly claims that defendants violated the Alaska Constitution by, respectively, denying her access to her land and condoning the denial. She has failed to develop this claim. *See Adamson v. University of Alaska,* 819 P.2d 886, 889 n. 3 (Alaska 1991) (declining to consider a point "given only a cursory statement in . . . a brief").

6. The court actually stated no deadline for the papers. It said only, "there will be $6,500 paid within seven days [and] defendants will be responsible for preparing the appropriate paperwork." One can read this to require defendants to prepare the papers within a reasonable time and to pay the $6,500 within seven days after that. Judge Joannides likely meant it thus, for she mentioned "getting the paperwork done," and said, "whether it's this week or 10 days from now, I can't imagine [that it will make] that big of a difference." Defendants, however, accept Dickerson's reading, and so shall we.

7. To prove the breach material, Dickerson would also have to show that it prejudiced her. *See* Restatement (Second) of Contracts §§ 241(a)-(b), 242(a)-(b). Our finding that time was not essential makes it unnecessary to decide whether she has shown prejudice.

8. The Restatement says that, even if a contract has no express time-of-the-essence clause, the circumstances of its formation can make time *implicitly* of the essence. *See* Restatement (Second) of Contracts § 242(c) & cmt. d. We have never addressed that theory, and do not do so today, for Dickerson has not raised it, arguing only that the agreement expressly made time essential.

9. And her original motion in response to defendants' lateness requested fees, costs, and a contempt finding, but did not ask the court to nullify the agreement. Indeed, she asked the court in the same filing to *enforce* the agreement; she only sought to nullify it after she discovered the wetlands problem.

defendants nor the court made Dickerson's desire to build as quickly as possible part of the contract, beyond the carefully limited permission to survey. Her claim that "time was of the essence as this was clearly the intention of the parties" is thus half-right. It was clearly her intention, but clearly not anyone else's. Dickerson thus cannot avoid the agreement over a missed deadline, and the court did not abuse its discretion in enforcing it.[10]

### C. The Court Did Not Abuse Its Discretion in Declining to Order a New Settlement Conference under Rule 59.

Dickerson claims that the court erred in not ordering "a new settlement conference" under Rule 59. That rule does not mention settlement conferences or authorize courts to grant anything but new trials.[11] Rule 16(a) authorizes a court "in its discretion" to order parties to confer for "such purposes as ... settlement," but no rule governs that discretion.

■ Dickerson argues that newly found evidence necessitated a new conference. We could, for the same reasons that Rule 59 authorizes courts to undo trials and order new ones in order to consider new evidence, construe it to authorize courts to undo settlements and order new conferences to renegotiate in light of new evidence. Whatever the merit of that idea, however, we need not

reach it in this case. Dickerson's appeal turns mainly on newly discovered evidence. The same analysis governs motions based on new evidence whether made under Rule 60(b) or Rule 59. See Grothe v. Olafson, 659 P.2d 602, 610 (Alaska 1983). Even were we to recognize a new-settlement-conference motion under Rule 59, Dickerson suggests no reason why our analysis of its denial would differ from the analysis that we already must conduct under Rule 60(b), and to which we now turn.

### D. The Court Did Not Abuse Its Discretion in Denying Dickerson Relief from the Judgment Enforcing the Settlement Agreement under Rule 60(b).

■ Rule 60(b) allows relief from final judgments or orders for six reasons, of which Dickerson invokes the first three:

1) mistake, inadvertence, surprise or excusable neglect;

2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); [or]

3) fraud ..., misrepresentation, or other misconduct of an adverse party[.]

Alaska R. Civ. P. 60(b)(1)-(3).[12] Her arguments all fail to overcome defendants' main point on appeal, and the court's rationale in denying relief:[13] she expressly assumed the

---

**10.** Judge Joannides gave no reason for denying—indeed, she never mentioned—Dickerson's initial request for fees and costs and a finding that defendants' alleged lateness was contemptuous. Dickerson's request for relief on appeal, however, asks us only to set aside the settlement, restore the full 200' easement, and void all actions taken to destroy her access to her land. We thus need not address whether the superior court erred by not awarding relief in the form of fees, costs, or contempt; Dickerson has abandoned any claim to those remedies. See State v. O'Neill Investigations, Inc., 609 P.2d 520, 528 (Alaska 1980) ("Failure to argue a point constitutes an abandonment of it.").

**11.** Rule 59(a) allows a court to grant a new trial "in an action in which there has been a trial by jury or in an action tried without a jury." Alaska R. Civ. P. 59(a). Although Dickerson refers to a "new trial" as well as a new settlement conference, her action was never tried, with or without jury. Obviously a court cannot abuse its discre-

tion by declining to grant a "new" trial in a case that has settled without a trial.

**12.** Dickerson filed most of her motions before the court's final order and not after, as Rule 60(b) contemplates. See Alaska R. Civ. P. 60(b) (requiring party to move for relief "for reasons (1), (2) and (3) not more than one year after ... notice" of final order). This does not bar us from analyzing them under Rule 60(b) principles and precedents. See Princiotta v. Municipality of Anchorage, 785 P.2d 559, 563 (Alaska 1990) (applying Rule 60(b) to motion filed after party had signed confession of judgment, but before court had entered judgment thereon, because "we have by analogy extended the application of Rule 60(b) to ... judgments rendered but not yet finally entered") (citing Brown v. Hawkins, 418 P.2d 28, 30 n. 5 (Alaska 1966)).

**13.** In denying Dickerson's proposed order nullifying the agreement, the court noted its "distinct recollection that the contingency or possibility

risk of wetlands problems and cannot complain now that they have arisen.[14]

We begin with facts relevant to all three potential grounds for relief. Dickerson alleges that in the late 1980s the Williamses "completely destroy[ed] any access to [her] property" by bulldozing the old road that she claims existed in addition to the jeep trail, and that they have "barred [her] from her [property] by all vehicular traffic ... for a total of 10 years." The Williamses had the easement's upper 100' inspected in 1991 to determine its fitness for a road. Borough Deputy Director of Engineering Strother walked through the area, and a hired engineer, Floyd Dollerhide, tested its soil for water. "Pending the soil investigation by ... Dollerhide," Strother stated, "the practicality of constructing a road in the north 100' ... can't be determined. But from initial field walkthrough, I do not see any great difficulty...." Dollerhide sank test holes in the upper 100', and the Board found that the results "proved that a [Borough-]standard road can be built in the northern 100'."

Dickerson inspected the old roadsite in the easement's lower 100' with a draftsman in May 1991 and had various people inspect the new road in the upper 100' in 1992. They found the new road ill-made and undrained. In August 1994 her federal coplaintiff prompted the Corps to investigate it. Dickerson has largely based this suit on the Corps' conclusion that the road had been illegally built in federal wetlands.

The superior court, in reciting the settlement, stated the parties' agreement that "the plaintiffs are bearing the risk of any action that the Corps ... might take with respect to the building of the new road." Dickerson did not object. Five days after the conference she asked the Corps to inspect the 50' strip. Before they had done so, she proposed to the court a settlement stipulation saying that "the obligation to clear with the ... Army as to [the new roadsite's] freedom from Wetland ... violation will rest solely with [her]." After the Corps told her that the 50' strip encompassed wetlands, she filed her motion(s) for relief from the judgment, noting the "newly discovered evidence" and claiming that she had been "misled." She refines her arguments on appeal to claim that she committed "excusable neglect" or made a "mistake" in agreeing to settle; that the Corps' finding constituted "newly discovered evidence"; and that defendants had committed "fraud or misconduct."

a. *The court did not abuse its discretion in finding no mistake, inadvertence, or excusable neglect under Rule 60(b)(1).*

 This court's decisions, like those of its federal counterparts, have neither expressly distinguished the separate grounds for relief under Rule 60(b)(1) nor set forth tests for them.[15] We have stressed, though, that to gain relief for excusable neglect a party must show not only "neglect," but a valid "excuse" therefor. *See Rill v. State, Dep't of Highways*, 669 P.2d 573, 576 (Alaska 1983). We also note that a leading commentator heads its discussion of federal Rule 60(b)(1) with the maxim: "deliberate ... conduct is never mistake or excusable neglect." 12 James T.

---

that the fifty feet at issue was still in 'wetlands' was discussed with plaintiffs and was recognized by them when [they] enter[ed] into the settlement."

**14.** We could analyze Dickerson's arguments about neglect, mistake, misrepresentations, and misconduct under the standards of *Rice v. Denley*, 944 P.2d 497, 499 (Alaska 1997), as we did her claim regarding the missed "deadline." The parties did not specify any standards to govern our review of the deadline issue, however, and so we applied the *Rice* framework. They have, in contrast, consistently and solely argued the remaining issues in terms of Rule 60(b), and so we analyze them thus—without thereby establishing any general rule as to which framework courts

should apply in similar disputes over unconsummated agreements to settle.

**15.** *See* 12 James T. McLaughlin et al., *Moore's Federal Practice* ¶ 60.41(1)(a), at 60–83 (3d ed. 1997) ("[C]ourt language rarely sets out any meaningful guide to what will or will not be found to be 'mistake, inadvertence, surprise, or excusable neglect' sufficient to justify relief ...."); *cf. Weiss v. State*, 939 P.2d 380, 397 n. 27 (Alaska 1997) (stating that, because Alaska Civil Rule 60(b) is modeled on its federal counterpart, federal authorities are instructive in interpreting it) (citing *Agostinho v. Fairbanks Clinic Partnership*, 821 P.2d 714, 716 n. 4 (Alaska 1991)).

McLaughlin et al., *Moore's Federal Practice* ¶ 60.41(1)(c)(i), at 60–88 (3d ed.1997); *see also Andrulonis v. United States*, 26 F.3d 1224, 1235 (2d Cir.1994) ("[Rule 60(b) ] does not allow [trial] courts to 'indulge a party's discontent over the effects of its bargain.' Accordingly, 'when a party makes a deliberate, strategic choice to settle she cannot be relieved of such a choice merely because her assessment of the consequences was incorrect.'") (quoting *Kozlowski v. Coughlin*, 871 F.2d 241, 246 (2d Cir.1989) and *United States v. Bank of N.Y.*, 14 F.3d 756, 759 (2d Cir. 1994)).

▆ Defendants insist that Dickerson in no way "neglected" the wetlands risk, but "understood and accepted [that contingency] as part of the settlement [she] made." This characterization may well be apt, but we assume *arguendo* that Dickerson did show "neglect" in accepting the risk of wetlands without requiring an inspection of the land. Even so, she has shown no "excuse" for that neglect.

Dickerson had been keenly aware of the wetlands issue for years. She knew that the easement's upper 100' contain wetlands. Yet she claims that it did not occur to her that the next 50' may as well—even after the court reminded her on the record of the parties' agreement that she would "bear[ ] the risk of any action that the Corps ... might take with respect to the building of the new road." She claims that defendants had denied her access to the 50' strip. She argues that this left her no choice but to infer, from Strother's and Dollerhide's 1991 suggestions that the upper 100' was suitable for a road, that "at least 150' [i.e., the upper 100' plus the 50' strip] would ... yield stable ground." Yet she filed this very suit to redress harm caused by the error of Strother's and Dollerhide's suggestions; for her to claim now that it was "excusable" to rely on those very suggestions is unpersuasive.

Dickerson expressly accepted the "risk" of wetlands without addressing her known ignorance of the 50' strip's condition. She had the time and ability to make arrangements to address her ignorance by insisting that the Corps first inspect the land. *See Rill*, 669 P.2d at 576 (finding attorney's neglect to inform court or client that he would miss trial for medical reasons inexcusable where attorney "clearly had the time and ability to ... make adequate arrangements"). Even if she felt a need to settle quickly, she could have conditioned her assent on the result of a later inspection. To neglect to do so was inexcusable.

▆ We analyze Dickerson's "mistake" claim similarly. We disfavor appeals from judgments embodying settlement agreements absent contract defenses like duress or mistake. *See Gravel v. Alaskan Village, Inc.*, 409 P.2d 983, 986 (Alaska 1966); *see also Dewey v. Dewey*, 886 P.2d 623, 625–26 (Alaska 1994) ("Absent a showing of a cognizable contract defense ... we hold parties to their voluntary bargains."); *Interior Credit Bureau, Inc. v. Bussing*, 559 P.2d 104, 105 n. 2 (Alaska 1977) (dictum) ("[R]elief from a stipulation which settles a case may be granted in situations similar to those in which relief from a contact is authorized.").

▆ Turning to contract principles, we note that a party who makes a unilateral mistake "as to a basic assumption on which the contract was made" may void the contract if she "does not bear the risk of the mistake." Restatement (Second) of Contracts § 153. One bears that risk if the contract allocates it to her. *See id.* § 154(a). We have adopted these standards and denied relief to many parties who bore the risk of mistake. *See, e.g., Stormont v. Astoria Ltd.*, 889 P.2d 1059, 1061–62 (Alaska 1995) (denying relief for mistake as to condition of building condemned after purchase, because contract stressed that sale was "as is"); *State, Div. of Agric. v. Carpenter*, 869 P.2d 1181, 1183 (Alaska 1994) (denying relief where contract expressly disclaimed warranty that land could serve given purpose, even though "both parties may have intended" that it so serve).

This case features not only the contract's express assignment of the risk to Dickerson, but her own surprising admission on appeal that she "should have been warned by [defendants'] representations ... that they made no guarantee [that a road] meeting federal standards[ ] could be constructed in the additional 50' offered." That is precisely

why her appeal lacks merit. Had the agreement recited that the 50' strip was free of wetlands—or even had it said nothing in a context permitting an inference that it was based on such an assumption—Dickerson might have a claim. Such is not the case. The trial court did not abuse its discretion in denying Dickerson relief.

b. *The court did not abuse its discretion in finding neither newly discovered evidence nor misconduct to warrant relief under Rule 60(b)(2) or (3).*

Dickerson's claims under Rule 60(b)(2) and (3) overlap, for her excuse for not having timely discovered her new evidence is that defendants kept her from doing so by misconduct and misrepresentations. We have analyzed one such hybrid claim under Rule 60(b)(2). *See Palmer v. Borg–Warner*, 838 P.2d 1243 (Alaska 1992) (applying Rule 60(b)(2), not (3), to claim that defendants fraudulently concealed evidence).[16] To warrant relief under Rule 60(b)(2), newly discovered evidence must (1) be likely to change the result on a new trial; (2) have been discovered after trial; (3) not have been discoverable, with due diligence, before trial; (4) be material; and (5) not be cumulative or impeaching. *See McCall v. Coats*, 777 P.2d 655, 657 (Alaska 1989) (applying test established by *Montgomery Ward v. Thomas*, 394 P.2d 774, 776 (Alaska 1964)). We need only address the third element, due diligence.

Dickerson alleges that, although duly diligent, she could not investigate the 50' strip before she settled. The Williamses, she claims, have for years denied her access to her land by blocking the old road. She suggests that she feared violence had she entered the vacated part of the easement. She also claims that defendants misrepresented the 50' strip's condition.

Our precedent would support relief for such wrongdoing if proved. We have reversed a denial of Rule 60(b)(2) relief where plaintiffs, who had sued after the period of limitation, discovered new evidence that defendant had intentionally, fraudulently concealed evidence of its liability. *See Palmer*, 838 P.2d at 1252. The vital questions in this case are thus whether Dickerson has proved wrongdoing and, if so, proved that it, and not a want of diligence, kept her from timely discovering evidence. We conclude that she did not adequately raise a claim that misconduct (i.e., threats) overcame her due diligence, and that she did raise, but did not prove, a claim that misrepresentations did so.

Dickerson only twice hinted that the Williamses had by threats kept her from the easement's lower 100'. She never mentioned a denial of access to the 50' strip when the court reminded her that she had agreed to bear the risk of any problem therein and asked, "Have I missed anything?" Even after learning of the wetlands problem, she never suggested threats as a ground for relief. Dickerson did not adequately claim below that misconduct kept her from discovering her new evidence. *See Hagans, Brown & Gibbs v. First Nat'l Bank of Anchorage*, 783 P.2d 1164, 1166 n. 2 (Alaska 1989) ("Issues not properly raised ... at trial are not properly before this court on appeal.").

Shorn of her threat claims, Dickerson's due-diligence argument is reduced to a claim that defendants misled her to settle by misrepresenting the 50' strip's condition.[17] The only "misrepresentations" she specifically alleges, however, are Strother's opinion that, pending soil investigation, he saw no trouble in building a road in the upper 100', and Dollerhide's soil investigation. Neither statement concerned the 50' strip. The statements concerned the upper 100', and

16. We mainly evaluate Dickerson's claim under Rule 60(b)(2), although we rely on Rule 60(b)(3) precedents as well. Analysis under those two subsections could differ in other cases, but in this case the same facts prevent Dickerson from showing that defendants' alleged misrepresentations either enable her to satisfy the due-diligence requirement of Rule 60(b)(2) or compel relief under Rule 60(b)(3).

17. Dickerson also alleges fraud regarding the old road that she claims existed in addition to the jeep trail. She claims that defendants falsely told the court that the Borough never maintained the old road, and claims that defendants concealed the old road's destruction by misidentifying photographs that they submitted to the court. Dickerson has not shown, however, that this dispute affected the settlement agreement whose enforcement she appeals.

they addressed its physical and not its legal condition—i.e., not whether it contained federal wetlands. Strother expressed an explicitly qualified opinion. Dollerhide's "statement" comprises a map and data.

 Although Dickerson refers loosely to "fraud," she never claims, or identifies evidence, that either "misrepresentation" was intentional. Misrepresentations, though, need not be intentional to merit relief under Rule 60(b)(3); negligent misrepresentations can suffice. *See Babinec v. Yabuki*, 799 P.2d 1325, 1333 (Alaska 1990). We thus assume *arguendo* that reliance on an adverse party's negligent misrepresentations could also in some cases enable one to satisfy Rule 60(b)(2)'s due-diligence requirement, and that one or both of the statements Dickerson identifies was a negligent misrepresentation. If so, then Dickerson claims that in 1996, as she decided whether the 50' strip would be legally suitable for a road, she relied on Strother's and Dollerhide's 1991 statements about the upper 100'. She did so despite knowing that when the Board relied on those statements, it approved a road whose proven illegality was the reason she had sued. This strains credulity; any such reliance was not reasonable.

We have never addressed whether one seeking relief under Rule 60(b) for reliance on a negligent misrepresentation must show that said reliance was reasonable or justifiable.[18] To dispose of Dickerson's appeal, we need not establish a comprehensive rule. Even if Dollerhide's and Strother's statements constituted negligent misrepresentations when made in 1991, Dickerson had actual knowledge that they were unreliable when she allegedly relied on them in 1996; she had sued the Borough largely because it

had relied on them. Such patently unreasonable reliance cannot constitute due diligence under Rule 60(b)(2).

## IV. CONCLUSION

We AFFIRM the superior court's decision in all respects.

EASTAUGH, J., not participating.

---

18. Nor, it seems, have federal courts. *See 12 Moore's Federal Practice, supra* note 14, ¶ 60.43, at 60–128 to –138. We note that we have not in prior cases required parties seeking relief under Rule 60(b)(3) for proven misrepresentations to show that reliance thereon was "reasonable" or "justifiable," as must one who seeks to avoid a contract or establish tort liability for a misrepresentation. *Compare McCall v. Coats*, 777 P.2d 655, 658 (Alaska 1989) *and Babinec v. Yabuki*, 799 P.2d 1325, 1333 (Alaska 1990), *with* Restatement (Second) of Torts §§ 537, 552(1) (1977) (requiring "justifiable" reliance) *and* Restate-

ment (Second) of Contracts § 164 (similar). *McCall* and *Babinec*, however, involved intentional deceit. In deciding the diligence due when an adversary fraudulently conceals evidence, we held that "[w]here there is an intent to mislead ... [one] should be charged with knowledge of the fraudulent misrepresentation or concealment only when it would be utterly unreasonable ... not to be aware of the deception." *Palmer v. Borg–Warner*, 838 P.2d 1243, 1251 (Alaska 1992). *Palmer*, though, also involved intentional deceit.