NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| JOHN HOTH,<br><br>               Appellant,<br><br>    v.<br><br>STACEY HOTH,<br><br>               Appellee. | Supreme Court No. S-19249<br><br>Superior Court No. 3KN-23-00420 CI<br><br><u>MEMORANDUM OPINION<br>AND JUDGMENT</u>*<br><br>No. 2151 – June 17, 2026 |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Kenai, Lance Joanis, Judge.

Appearances: Benjamin Frey, Ben Frey: Attorney at Law, Soldotna, for Appellant. Paul S. Morin, Alaska Network on Domestic Violence and Sexual Assault, Kenai, for Appellee.

Before: Borghesan, Henderson, and Oravec, Justices. [Carney, Chief Justice, and Pate, Justice, not participating.]

## I. INTRODUCTION

A woman petitioned the district court for a long-term domestic violence protective order (DVPO) against her former husband. After a hearing involving testimony from both parties, the district court granted the order. The man later filed a motion for relief from judgment under Alaska Civil Rule 60(b), arguing that relief was warranted on two grounds: (1) mistake, inadvertence, surprise, or excusable neglect;

---

\*     Entered under Alaska Appellate Rule 214.

and (2) newly discovered evidence.  The superior court denied the motion, concluding that the man had not shown relief was warranted on either ground.

Seeing no abuse of discretion in this ruling, we affirm.

## II.    FACTS AND PROCEEDINGS

Stacey and John Hoth[1] married in 2015 and had a child together in 2019.  They filed for divorce in May 2023.

### A.    DVPO Proceedings

On June 2, 2023, Stacey filed for a long-term DVPO.  In the petition, Stacey alleged that John had been physically violent with her in the past, had verbally threatened her, and had a history of domestic violence with the mothers of his other children.  Stacey also described an incident during which John "broke the locked front door down to get to [her] and threatened to break down the locked bedroom door."[2]

John also filed DVPO petitions against Stacey, and all petitions were scheduled to be considered during the same hearing.

Soon after being served with notice of Stacey's petition and the upcoming hearing date, John filed a request with the Alaska State Troopers for the records pertaining to the door incident described in Stacey's petition.  He did not receive the requested incident report in time for the long-term DVPO hearing.

The long-term DVPO hearing took place on June 20, 2023.  Both parties represented themselves during the hearing.  Both parties testified about the incidents described in their DVPO petitions, including the door incident.  Stacey reiterated her account that in April 2022, John broke down the locked front door while screaming at her and threatening to break into the room in which she had locked herself.  She added

---

[1]    Pseudonyms are used to protect the parties' privacy.  Because the parties have the same last name, we refer to them by first name for clarity.

[2]    This incident is referred to hereinafter as the "door incident."

that when the police arrived, they were going to arrest John but she "begged them not to."

Regarding that incident, John testified that the frame of the door had already been damaged when the incident occurred, and that because of this, he thought it was stuck and "bumped it with [his] shoulder." In doing so, he knocked a large glass piece out of the door, which fell but did not break. He testified that he did not "even bother with" Stacey while he was there, but just taped the door up with duct tape and cardboard and then left.

Stacey also testified that she was afraid of John because he had a "history of domestic violence." She said she had "witnessed his rage . . . [and] anger" get worse over the ten years she had lived with him, which manifested in physical violence and threatening behavior. John characterized her testimony as "ridiculous lies to try to get an order to have control over custody" and "delusional stuff from her brain disorder."

Before ruling on the orders, the court asked John if he wanted a continuance to gather more evidence, and John declined. He said, "I'm not asking for anything; the stuff I would bring would just be her volatile behavior."

The district court then entered a long-term DVPO in Stacey's favor. It found that Stacey had not met her burden to prove some of the incidents alleged in the petition, but that regarding the door incident, she had offered credible testimony and met her burden of proof. It concluded that while John had not acted intentionally when he broke down the door, his actions were "at least reckless" and had put Stacey in "reasonable fear of imminent physical injury," especially in light of the fact that Stacey had credibly "grown to be afraid" of John over the years. It explained that the basis for its decision was that John "admitted to breaking the door," finding that "in the context of the relationship . . . that put her in reasonable fear of imminent physical injury."

The court notified John that he had thirty days to appeal. He did not file an appeal in that time period.[3]

**B.      John Files A Rule 60(b) Motion For Relief From Judgment.**

Exactly one year after the district court entered the long-term DVPO, John — now represented by an attorney — filed a motion for relief from judgment under Alaska Civil Rule 60(b)[4] in superior court. He argued that the DVPO should be set aside under Rule 60(b)(1)[5] because he had only had two weeks to prepare for the hearing, was representing himself, and had "limited" foresight as to "what would be important evidence." He also argued that the order should be set aside under Rule 60(b)(2)[6] because he had been unable to procure the police report about the door incident in time for the hearing, he now had a sworn affidavit from his mother indicating that the door had been "fault[y] for years," and he had since found photographs that showed that the door was broken before the incident. He contended that his motion to set aside judgment was especially important because he had been "charged with a

---

**3**      John did file a self-represented motion in the district court "to set aside judgment" on January 17, 2024. At the motion hearing John argued that the long-term DVPO should be set aside because he had not had time to prepare for the original DVPO hearing and because he had obtained new evidence that he had not had access to in June 2023. The district court concluded that the motion to set aside was procedurally improper. It ordered the DVPO matter to be transferred to the superior court judge who was assigned to the parties' divorce and child custody case and instructed John that he could file an appeal of the DVPO in superior court. John did not appeal to the superior court.

**4**      *See* Alaska R. Civ. P. 60(b) ("On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order, or proceeding . . . .").

**5**      Alaska R. Civ. P. 60(b)(1) (providing that court may relieve party from judgment where there was "mistake, inadvertence, surprise or excusable neglect").

**6**      Alaska R. Civ. P. 60(b)(2) (providing that court may relieve party from judgment where there is "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial").

violation of" the long-term DVPO and because the DVPO "ha[d] an impact on his divorce and custody case."

The superior court denied John's motion in September 2024. It first concluded that there was no "excusable neglect or a mistake to warrant relief" under Rule 60(b)(1), reasoning that both parties had represented themselves during the relevant proceedings, that John had acknowledged that he had a "normal amount of warning time" for the hearing, and that John had declined when the court asked him directly if he wanted a continuance.

Turning to John's Rule 60(b)(2) argument, the court agreed with John that it was "through no fault of his own" that he was unable to procure the police report by the time of the hearing. But after examining the police report, the court concluded that it did not "provide new evidence showing that [John's] actions were not reckless, or that [Stacey] was not in fear for her safety."

As to the photographs and the affidavit from John's mother, the court concluded that John could have procured those materials in the two weeks before the hearing. It noted that because Stacey's original DVPO petition discussed the door incident, John had notice that she would raise the incident at the hearing. It concluded that the photographs and testimony related to the door therefore did not qualify as "newly discovered evidence" under Rule 60(b)(2).

John appeals the superior court's denial of his Rule 60(b) motion.

## III.  STANDARD OF REVIEW

"[R]elief from a judgment is addressed to the sound discretion of the trial court and [the] court's ruling will not be disturbed except upon a showing of abuse of discretion."[7] In reviewing whether a Rule 60(b) motion was properly denied, we will

---

[7]  *Richard v. Boggs*, 162 P.3d 629, 632 (Alaska 2007) (alterations in original) (quoting *Alaska Truck Transp., Inc. v. Inter-Alaska Credit Serv., Inc.*, 397 P.2d 618, 619-20 (Alaska 1964)).

find an abuse of discretion when the superior court's decision was "manifestly unreasonable."[8] We review the factual findings underlying a Rule 60(b) ruling for clear error.[9] "We review de novo issues concerning the interpretation of civil rules, adopting the rule of law that is most persuasive in light of precedent, policy and reason."[10]

## IV. DISCUSSION

John raises three main arguments on appeal. First, he argues that the superior court "erred . . . by incorrectly finding that there was no surprise, mistake, or excusable neglect" warranting relief under Alaska Civil Rule 60(b)(1). Second, he argues that the superior court should have granted relief under Alaska Civil Rule 60(b)(2) on the basis of the police report. Third, he argues that the superior court erred by failing to admit the photographs and the affidavit from John's mother as "newly discovered evidence" under Rule 60(b)(2).

After evaluating each of these arguments we conclude that the superior court did not abuse its discretion in denying John's motion.[11]

### A. The Superior Court Did Not Abuse Its Discretion In Finding That There Was No Mistake, Inadvertence, Surprise, Or Excusable Neglect Warranting Relief From Judgment Under Rule 60(b)(1).

John argues that the superior court abused its discretion by failing to grant relief under Rule 60(b)(1) on the basis of his failure to acquire additional evidence

---

[8]     *Red Hook Constr., LLC v. Bishop*, 556 P.3d 1188, 1192 (Alaska 2024) (quoting *BBFM Eng'rs, Inc. v. McDonald*, 530 P.3d 352, 356 (Alaska 2023)).

[9]     *Id.* (quoting *Sandberg v. Sandberg*, 322 P.3d 879, 886 (Alaska 2014)).

[10]     *Chena Obstetrics & Gynecology, P.C. v. Bridges*, 502 P.3d 951, 957 (Alaska 2022) (quoting *Bravo v. Aker*, 435 P.3d 908, 912 (Alaska 2019)).

[11]     Stacey also raises for the first time on appeal the argument that John's Rule 60(b) motion was not filed within a "reasonable time," as required by the rule. Because we affirm the superior court's denial of John's Rule 60(b) motion on the merits, we do not address whether the motion was timely. *See Rill v. State, Dep't. of Highways*, 669 P.2d 573, 576 (Alaska 1983).

before the hearing. Rule 60(b)(1) provides that a court may relieve a party from final judgment for "mistake, inadvertence, surprise[,] or excusable neglect."[12] To prevail on a Rule 60(b)(1) appeal, the appellant must demonstrate the existence of a ground for relief and show "that the superior court's refusal to relieve [him] from the final judgment was 'manifestly unreasonable.' "[13]

John first argues that his failure to gather more evidence about the door incident was due to a mistake, inadvertence, or surprise entitling him to relief. But "we will not find a 'mistake' where no facts in the record support a party's claim of lack of understanding."[14] There are no facts in the record to support John's assertion that he did not or could not understand that the door would come up in the hearing such that he might wish to marshal evidence about it. On the contrary, Stacey raised the door incident in her petition. And when the superior court directly asked John whether he wanted a continuance in order to gather additional evidence, John responded that he did not need a continuance, even knowing that the door incident was discussed at some length during the hearing. It was not an abuse of discretion for the superior court to conclude that there was no mistake, inadvertence, or surprise entitling John to relief under Rule 60(b)(1).

John also argues that he is entitled to relief under Rule 60(b)(1) because he had insufficient time to prepare for the hearing. Although John is not clear about how his argument regarding preparation time presents a basis for relief under Rule

---

**12**     Alaska R. Civ. P. 60(b)(1).

**13**     *Erica G. v. Taylor Taxi, Inc.*, 357 P.3d 783, 788 (Alaska 2015) (quoting *Ranes & Shine, LLC v. MacDonald Miller Alaska, Inc.*, 355 P.3d 503, 508 (Alaska 2015)).

**14**     *Sandberg*, 322 P.3d at 887; *see also Dickerson v. Goodman*, 161 P.3d 1205, 1207-08 (Alaska 2007) (rejecting relief under Rule 60(b)(1) where there was no evidence to support appellant's claim that she misunderstood her rights because English was not her first language).

60(b)(1), he appears to suggest that the allegedly insufficient preparation time resulted in excusable neglect on his part. But John received notice of Stacey's petition and the DVPO hearing date two weeks ahead of the hearing, and he acknowledged before the superior court that two weeks was a "normal amount of warning time to be aware of the hearing."[15] And once again, when the court offered John a continuance to gather more evidence, John declined.

Finally, John argues that the hardship of preparing for another hearing in his divorce and custody case and caring for his son who has special needs, as well as his self-represented status, establish excusable neglect entitling him to relief under Rule 60(b)(1). We have emphasized that in order to seek relief on the basis of excusable neglect "a party must show both neglect and a valid excuse for that neglect," and that party must show that the excusable neglect caused the failure to timely act.[16] But even if we accept John's characterization of any deficiencies in his preparation as "neglect,"[17] John does not establish how either of the excuses he offers caused his neglect to gather more evidence or further prepare for the hearing. Indeed, John's decision not to seek the continuance offered by the superior court undermines any such connection. While John may now regret this choice, such regret regarding choices made in litigation is not in itself a basis for relief under Rule 60(b).[18] The superior court did

---

[15] *See* AS 18.66.100(b) ("When a petition for a protective order is filed, the court shall schedule a hearing and provide at least 10 days' notice to the respondent of the hearing . . . .").

[16] *Chena Obstetrics & Gynecology, P.C. v. Bridges*, 502 P.3d 951, 958 (Alaska 2022).

[17] We are skeptical that any deficiencies in John's preparations actually constitute neglect because he made a deliberate choice not to undertake further preparation when he declined the superior court's offer of a continuance. *See Dickerson v. Williams*, 956 P.2d 458, 465-66 (Alaska 1998) (explaining that for purposes of Rule 60(b)(1), there is no "neglect" where a party makes a deliberate choice).

[18] *See* Alaska R. Civ. P. 60(b).

not abuse its discretion in rejecting John's claim of excusable neglect and denying relief under Rule 60(b)(1).[19] And the superior court did not err in interpreting Rule 60(b)(1) to require more than what John has alleged to warrant relief.

B. **The Superior Court Did Not Abuse Its Discretion In Denying Relief Under Rule 60(b)(2) On The Basis Of The Police Report.**

John argues that the police report concerning the door incident, which he was unable to procure until after the DVPO hearing, constitutes newly discovered evidence warranting relief under Rule 60(b)(2). We disagree.

In order to set aside a judgment on the basis of newly discovered evidence, the proffered evidence must meet five requirements: it must "(1) be likely to change the result on a new trial; (2) have been discovered after trial; (3) not have been discoverable, with due diligence, before trial; (4) be material; and (5) not be cumulative or impeaching."[20] Because the police report fails to satisfy the first and fifth requirements, we need not address the other three requirements.

Regarding the first requirement that newly discovered evidence be likely to change the result of a new trial, the superior court did not abuse its discretion in concluding that the police report was not likely to change the result of the proceedings. The report essentially restates John's reporting of events, which the district court had access to through John's testimony. While the report includes a statement that the police "decided no crime had occurred," this determination does not affect or supplant the court's role in deciding, based on the broader array of testimony before it, whether a crime had occurred for the purposes of considering the parties' DVPO petitions.[21]

---

[19] *See Williams*, 956 P.2d at 465-66.

[20] *Id.* at 467.

[21] *See* AS 18.66.100(b) ("If the court finds by a preponderance of evidence that the respondent has committed a crime involving domestic violence against the petitioner, regardless of whether the respondent appears at the hearing, the court may order any relief available under (c) of this section . . . .").

Ultimately, the district court's conclusion that an assault occurred was based on Stacey's in-person testimony about the door incident and about John's controlling and violent behavior more generally, as well as John's admission that he did in fact knock the door in after the pair argued.[22] Because the police report does not contradict any of these underlying factors in the district court's decision, it was not an abuse of discretion for the superior court to conclude that the police report was unlikely to affect the outcome of the proceedings. Nor was it error for the superior court to conclude that Rule 60(b)(2) required John to demonstrate that the police report provided new evidence showing that a crime of domestic violence did not occur.

The superior court also did not abuse its discretion in concluding that the police report failed to meet the fifth requirement that newly discovered evidence not be cumulative or impeaching. The report does not include Stacey's allegations from the door incident that John was screaming at her and that she begged the police not to arrest him, which might suggest it could be used as impeachment evidence. However, we have held that "[e]vidence which merely impeaches a witness's testimony is not usually sufficient to warrant the grant of a new trial" under Rule 60(b)(2).[23] Even as an impeachment tool, the police report would provide little assistance to John, as it does not directly contradict Stacey's testimony.

In sum, because the police report provided no new evidence demonstrating that Stacey was not afraid of John at the time of the door incident or that

---

[22]    John argues that in evaluating whether the door incident was a crime, the district court should not have relied on Stacey's testimony about other incidents that it found did not rise to the level of crimes of domestic violence. However, our precedent acknowledges that the court was permitted to consider testimony about past violence when determining whether Stacey's fear during the door incident was reasonable. *See, e.g.*, *Vince B. v. Sarah B.*, 425 P.3d 55, 63 (Alaska 2018) (noting we have held "denial of an earlier petition for a protective order does not necessarily bar the court from considering the same conduct in deciding a later petition").

[23]    *State v. Alaska Cont'l Dev. Corp.*, 630 P.2d 977, 992 (Alaska 1980).

John did not act recklessly in knocking in the door, it was not an abuse of discretion for the superior court to deny relief under Rule 60(b)(2).

**C. The Superior Court Did Not Abuse Its Discretion In Denying Relief Under Rule 60(b)(2) On The Basis Of The Evidence Regarding The Condition Of The Door.**

Finally, John argues that he is entitled to relief under Rule 60(b)(2) on the basis of other evidence he has since gathered, including an affidavit from his mother about the door at issue in the door incident and four photographs purporting to illustrate the condition of the door before and after the incident.

As discussed above, newly discovered evidence only warrants relief under Rule 60(b)(2) if it satisfies five elements, including that the evidence was not discoverable before trial.[24] Regarding John's mother's affidavit, John argues that due to the hardship of being self-represented and his other obligations, he could not have predicted the importance of the door incident or gathered this evidence before the hearing. These arguments are more pertinent to John's claim for relief under Rule 60(b)(1), and, as discussed above, John failed to meet his burden to establish surprise, mistake, inadvertence, or excusable neglect under the rule. However, even if we consider these arguments under Rule 60(b)(2), John was on notice that the door incident could be raised at trial, and he declined the opportunity to further develop relevant evidence even after the court heard testimony about the door incident. He was also ostensibly aware that others in his life, such as his mother, had observed the condition of the door in the past. We are therefore unpersuaded that John could not have obtained his mother's affidavit concerning the door's condition before the hearing concluded. Moreover, Rule 60(b)(2) requires that evidence could not have been discovered with due diligence *in time to move for a new trial*.[25] Therefore, even if we assume that John

---

[24] *Williams*, 956 P.2d at 467.

[25] Alaska R. Civ. P. 60(b)(2).

was not able to obtain or predict the need for his mother's affidavit before the hearing, he certainly had the opportunity to seek this evidence once the DVPO was granted on the basis of the door incident.[26]

Additionally, newly discovered evidence must not be cumulative in order to support relief under Rule 60(b)(2).[27] Both the affidavit and the photographs[28] pertaining to the condition of the door are cumulative to John's testimony at the hearing that the door had "some damage to the frame already" that made it hard to open.[29] The photographs and affidavit might buttress that point, but ultimately, they would be "repeating" the point made in John's testimony.[30] Moreover, the district court ultimately found that John did not break down the door intentionally, indicating that it believed that he thought the door was unlocked because it was often jammed. But the court concluded that John was still reckless in forcing the door open given the larger context of the parties' argument, their turbulent relationship, and Stacey's fear of

---

[26] We note that the time to move for a new trial under Alaska Civil Rule 59(b) is ten days after the judgment is distributed. John brought his motion for relief a year later, far exceeding that deadline.

[27] *Williams*, 956 P.2d at 467.

[28] John provided an affidavit indicating that he was unable to access the older photograph of the door before the hearing because he had forgotten it existed and because he was blocked from Stacey's social media profile (where it was stored) during the days leading up to the hearing and the day of the hearing. However, because the door photographs are cumulative to John's testimony at the hearing, we do not consider whether he could have obtained the photographs before trial.

[29] *See Wasserman v. Bartholomew*, 923 P.2d 806, 813 (Alaska 1996) (describing cumulative evidence as that which either "support[s] an uncontested or established fact" or "repeat[s] a point made by previous evidence").

[30] *See id.*

John.[31]  Therefore, it was not an abuse of discretion for the trial court to conclude that the photographs and the affidavit would not impact the result of the hearing and did not entitle John to relief under Rule 60(b)(2).

## V.     CONCLUSION

We AFFIRM the superior court's denial of John's Rule 60(b) motion.

---

[31]     John may disagree with the court's conclusion that Stacey was scared of him, but that finding is grounded in Stacey's testimony about John's behavior toward her over the previous decade. *See Moore v. Moore*, 349 P.3d 1076, 1080 (Alaska 2015) ("[T]he trial court, not this court, judges the credibility of witnesses and weighs conflicting evidence." (quoting *Sheffield v. Sheffield*, 265 P.3d 332, 335 (Alaska 2011))).